## CORBIN *v.* STATE OF INDIANA.

[No. 30,850. Filed February 23, 1968. Rehearing denied April 4, 1968.]

*C. Thomas Cone,* of Greenfield, for appellant.

*John J. Dillon,* Attorney General, and *Charles J. Deiter,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The State of Indiana indicted appellant for murder in the first degree, and after trial the jury found him guilty of murder in the second degree, and the court entered judgment accordingly.

The assignment of errors the appellant filed in the trial court, upon which this appeal is based, is concerned primarily with the sufficiency of the evidence. This consists chiefly of the argument that there is no evidence of malice. Second degree murder is defined by the statute as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, . . ." Acts 1905, ch. 169, § 350, p. 584, being Burns' Ind. Stat. Anno. § 10-3404 [1956 Repl.].

The evidence in this case shows that the appellant inflicted wounds and injuries on his daughter on the evening of October 24, 1964, which brought about her death. She died on October 27th of that year. The child was age 21 months at the time of her death.

The evidence showed that the embalmer testified he made an ambulance run to the residence of the appellant and his family on the night of October 27th; that the child was apparently dead at the time. The coroner asked the appellant how the child received the bruises and injuries which were very apparent, and his answer was that he had a terrible temper. Dr. Kirby also testified that at the hospital he found the baby was dead; that the child appeared to be two or three years old; that it had numerous bruises all over its body. He also, when he informed the appellant of the baby's death.

asked him how it happened, and the appellant responded: "Oh, I have a terrible temper." Dr. Costin, a physician specializing in pathology, also testified. He stated he had performed an autopsy on the child; that there were internal hemorrhages and bruises throughout the body and over almost the entire body surface; that the bruises varied from one to three days in age; that the death was caused by a blunt blow to the abdomen that would have to be of considerable force; that the injuries caused the death over a period of time, rather than suddenly; that there was evidence of blows and abrasions on the right forearm, left leg and hemorrhages in the scalp; and that there were hemorrhages in the right kidney. Other evidence shows that the child, at the time the injuries were inflicted by the father, was crying and apparently irritated him, and that he first slapped it and bruised it. Following this, further blows were administered.

Any one with reasonable judgment would know that one of the blows of the magnitude of any of these numerous blows could have fatally injured this child, which apparently was sick at the time. Where such blows of such magnitude are repeated, any jury would have a right to conclude that the perpetrator intended to kill. Malice as a legal inference may be deducted from a perpetration of any cruel act, and the law presumes an individual intends the consequences of his acts.

In *Stice* v. *State* (1949), 228 Ind. 144, 89 N. E. 2d 915, the evidence showed that the defendant used his fists to inflict blows on a female, age 46, weighing 125 pounds, with result that she died from the numerous blows received. This court held that the blows from the fists of a mature man inflicted upon one more or less defenseless, constituted evidence of malice and also intent to kill. In the case before us, the disparity in the strength of the appellant in this case and the two year old child is still greater, and any one would know that the blows such as inflicted by the appellant in this case upon the infant would result in its

death. Intent to kill may be inferred particularly in view of the relative size, age and strength of the defendant and the victim. The acts of a powerful defendant who continued to beat a victim who was smaller and lying on the ground helpless showed the defendant's intent to kill the decedent. *State v. Powell* (App.) 75 Ohio L Abs 33, 142 N. E. 2d 244. See also: *Sadler* v. *State* (Texas Crim.), 364 S. W. 2d 234; *Commonwealth of Pennsylvania* v. *Buzard* (1950), 365 Pa. 511, 76 A. 2d 394, 22 A.L.R. 2d 846.

In an action for assault with intent to murder with malice arising out of the beating of a three months old child by a defendant father, evidence supported the jury's finding that the defendant acted with malice and intent to kill. *Hignett* v. *State* (Texas Crim.), 341 S. W. 2d 166.

The defendant contends that the court erred in admitting evidence that a few months prior he had been convicted of excessively beating this same child and another child. In answer to his contention that there is no evidence of malice, these prior acts of assault go to prove such mental condition. Courts have held unanimously that prior threats and acts of beating or assault upon an individual may be considered by a jury in determining not only malice, but also premeditation.

In *Wahl* v. *State* (1951), 229 Ind. 521, 530, 98 N. E. 2d 671, 675, this Court stated that the question of malice and premeditation is a question of fact for the jury, and that the jury had a right to consider all circumstances "regardless of whether the circumstances occurred before or after the homicide. Malice may be inferred from any deliberate or cruel act by one person against another. . . . In the case now before us, there was direct testimony of a prior threat and a prior assault on the deceased, Louise Woodford. There was evidence, both direct and circumstantial, from which reasonable inferences of purpose and premeditated malice could be drawn by the jury."

The court did not err in permitting evidence of prior assaults upon this child by the appellant, particularly as recent as that here under the evidence.

It is further argued that since the State introduced the statements and conversations of the appellant that "I lost my temper", etc., it precludes an inference of intent to kill and negates the State's contention thereby. In other words, the argument is made that because some of the evidence, along with other evidence introduced by the State is favorable to the defendant, that the State is bound thereby and the jury has no right to disregard such evidence and weigh it with other evidence. We have never heard of such a principle of law, nor is any authority cited to support it. Such a principle, if invoked, would deny the jury's constitutional right to weigh the evidence and select such as it desired to believe. We do not believe the State nor a defendant can so handicap a jury in its consideration of the evidence. We point out also that the State or a defendant may in many cases have to use a witness and introduce certain evidence necessary in making out its case, and there may also come into the case other evidence favorable to the opposing side. This does not mean that the party introducing such evidence is bound thereby to the exclusion of the right of the jury to consider all the evidence.

Finally, we may say, we do not believe the law is such that the defendant ought to be able to hide behind the contention "I lost my temper" in dealing blows of the size and character in this case upon a defenseless infant and escape the verdict of the jury. Common experience and knowledge of jurors tell them that a person may lose his temper and intend to kill. The jury thought that happened in this case from the abundant evidence. The ordinary dictionary definition of "temper" covers ill-will, spite, hatred, meanness and "a choleric temper". A terrible temper or an unreasoning temper of an individual may include malice and even premeditation, as stated in *Wahl* v. *State, supra.*

The judgment of the trial court is affirmed.

Lewis, C. J. and Hunter, J. concur.

Mote, J. dissents with opinion, in which Jackson, J. concurs.

DISSENTING OPINION

MOTE, J.—I respectfully dissent from the majority opinion herein only because I feel it to be my duty to require strict proof of intent by one mentally capable of having intent.

Appellant was indicted for murder in the first degree by a Hancock County Grand Jury and pleaded "not guilty" to the indictment. The cause was venued to the Henry County Circuit Court, on motion of Appellant, where it was tried by a jury which returned a verdict of guilty of murder in the second degree. A Motion for New Trial was filed and over-ruled, after which judgment was entered on the verdict and a sentence of life imprisonment was imposed. The indictment, omitting the formal parts, read as follows:

"The Grand Jurors for said State of Indiana, impaneled, charged and sworn in the Hancock Circuit Court to inquire within and for the body of said county of Hancock, upon their oath, charge and present that Norman Lee Corbin and Rose Corbin at said county on the 24th day of October, A.D. 1964, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder one Anita Corbin, a human being by then and there unlawfully, feloniously, purposely and with premeditated malice, beating and striking the said Anita Corbin with their hands and thereby inflicting a mortal wound in and upon the body of the said Anita Corbin, of which mortal wound the said Anita Corbin then and there languished, and from which mortal wound on the 27th day of October, in the year aforesaid, the said Anita Corbin, in the county aforesaid, then and there and thereby died. And so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said Norman Lee Corbin and Rose Corbin, in the manner and form and by the means aforesaid, unlawfully, feloniously, purposely and with premeditated malice did kill and murder the said Anita Corbin, then and there being contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

The judgment was as follows:

"Comes now the State of Indiana by its Prosecuting Attorney, and comes now the defendant, in person and by counsel, as aforesaid, and Hearing held upon sentencing of the defendant and the Court now pronounces judgment upon the verdict of the jury, and upon his conviction of murder in the second degree, the defendant, Norman Lee Corbin, age 22 years, is now sentenced to the Indiana State Prison for life."

The Assignment of Errors filed in this Court asserts that the trial court erred in overruling Appellant's Motion for New Trial and Appellant asserts as error in this appeal (1) that the verdict of the jury is contrary to law and (2) that the verdict of the jury is not sustained by sufficient evidence. In his brief, the Appellant has grouped the two alleged errors and we shall so consider them.

A careful review of the evidence leads us to the conclusion that there is but one real question presented in this appeal and we shall proceed to consider it. As above stated, Appellant was indicted and tried for murder in the first degree of his twenty-one months old child, Anita. The jury found Appellant guilty of murder in the second degree and the court sentenced him commensurate with the prevailing statutory provisions. Second degree murder is defined by statute, as follows:

"Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, . . ." § 10-3404, Burns' Ind. Stat. Anno., 1956 Repl.

The statutory difference between second degree murder and first degree murder generally is that in the latter mentioned crime, premeditated malice is an essential element and must be alleged and proved. Section 10-3401, Burns' Ind. Stat. Anno., 1956 Repl., in significant part, provides:

"Whoever purposely and with premeditated malice, . . . kills any human being, is guilty of murder in the first degree, . . ."

The terms "premeditated malice" and "purposely and maliciously, but without premeditation", as used in the statutes, often are difficult not only to apply to a given set of circumstances in a particular case, but also to prove. Hence, as to the latter mentioned term, the courts of this jurisdiction have come to permit the proof thereof to rest upon inferences from reasonably established facts or circumstantial evidence. In the interest of justice, this principal has been well established by the case law of this and other states.

However, the principal may be correlated to other well established principals, one of which is that a person charged with a crime is presumed to be innocent until proven and found guilty beyond a reasonable doubt by a jury of his peers. The principal is not always applicable.

This principal, in many instances, appears to have been satisfied if the inferences or the circumstantial evidence in a case meet the requirements of the jury and the trial court, who, at best, do not always have the time and in some instances the inclination to provide the impartial application of the evidence, inferences and circumstances to this most important phase of necessary proof. We think it is incumbent on this Court, on review, not to weigh the evidence upon this phase of the statutory prerequisite to conviction, but to ascertain whether there is reasonable proof thereof. *Mattingly* v. *State* (1952), 230 Ind. 431, 438, 104 N. E. 2d 721, 723; *Cross, Jr.* v. *State* (1956), 235 Ind. 611, 614, 137 N. E. 2d 32.

That Appellant is guilty of inflicting wounds and injury to his child, which brought about her death, is abundantly clear from the evidence before us. During the evening of October 24, 1964, Appellant inflicted excessive punishment and mortal injuries upon his infant daughter, from which she died some time during the night of October 27, 1964. Observing that the child was suffering greatly, efforts appear to have been made by Appellant and his wife, also under indictment, to obtain the services of a physician, without avail. It is not

clear whether Appellant or the child's grandmother, with whom Appellant, his wife and two children, including the infant, Anita, and a retarded brother of Mrs. Corbin, resided in rural Hancock County, called an ambulance in which the child and Appellant were transported to a hospital. The child probably was not alive at the time, according to Witness Charles Gambrel, who operated the ambulance on this particular call, in the presence of Appellant's wife, a doctor and the Deputy Coroner Jack Pasco, "(T)he Coroner asked Mr. Corbin how the child received the bruises and Mr. Corbin said he had a terrible temper."

The physician, Dr. Ted C. Kirby, testified that he examined the body and called the Coroner. Dr. Robert L. Costin, a pathologist of Indianapolis, performed an autopsy and testimony as to his findings is as follows:

"On the 27th of October, 1964, I performed an autopsy on Anita Lynn Corbin at the request of the Hancock County Coroner. I performed it at Pasco Funeral Home in Greenfield, Indiana. Present was the Prosecuting Attorney of Hancock County, the Coroner, members of the Indiana State Police, staff of the Pasco Funeral Home, and my Greenfield Secretary, Mrs. Sherrill Shirk. State's exhibits 1, 2, and 3 are pictures of the Corbin baby prior to autopsy.

The autopsy findings were (1) free air in the peritoneal cavity, (2) a peritoneal hemorrhage and a rupture of the small intestine in the last portion of the duodenum and first portion of the jejunum, with a hemorrhage in the wall of the intestines in this area. There was frothy fluid extruding from the nose and mouth, numerous bruises over the entire body surface.

'I believe the child died of intra-peritoneal hemorrhage secondary to a blood clot or hemotoma in the wall of the small intestine and rupture of the intestine in this area.'

On the basis of miscroscopic [sic] examination, one could see evidence that the blood had clotted in the wall of this portion of the intestine and excited some inflammatory response 'which would indicate that it was not, that it had been there for a perod of time'. I have an opinion based on experience and medical knowledge that such lesions are commonly seen from blunt blows to the abdomen.

I found evidence of other trauma: abrasion of the right forearm and of the left leg, sub-galea or hemorrhages into the scalp, and the right and left perital areas. Also, there was interstitial hemorrhage around the right kidney and leaf of the diaphragm."

It would be too mild to remark other than that this infant suffered a brutal attack which cannot be excused or condoned under any circumstances. Appellant had completed, only a few weeks prior to this occurrence, a six months' term at the Indiana Farm, having been charged with and convicted of the abuse of Anita and another child. There was testimony by a neighbor that he had seen Appellant punish the deceased only a short time prior to the present incident.

Over objection of Appellant, State's Exhibit 4, purporting to be a confession, was introduced into the evidence and is as follows:

"Date 10-27-64 Page No. 1

STATEMENT OF:

*Norman Lee Corbin*

Either Saturday night or Sunday, I believe Saturday night, I lost my temper. Anita was wining, everything went boom and then I don't remember anything. Except after it was over, I came back to my senses and realized what had happened. Realized that I had hit Anita. Hit her with my hand as far as I know. My wife and my son were present. I, Norman Lee Corbin have read this statement and it is true. I have been advised of my rights and give this statement voluntarily and without any duress or coercion.

s/ Norman L. Corbin

*Witnesses*

Geo. J. Lewis
Raymond H. Kemper
Edwin W. Kirkpatrick".

The objections raised by Appellant to the introduction of State's Exhibit 4 appear to be without merit. The corpus delicti may be proven by evidence, as here, from which a

reasonable person could infer that a crime has been committed of the character and nature charged. *Hayden* v. *State* (1964), 245 Ind. 591, 199 N. E. 2d 102; *Holding* v. *State* (1963), 244 Ind. 75, 190 N. E. 2d 660; *Brown* v. *State* (1958), 239 Ind. 184, 154 N. E. 2d 720.

There is a conflict in the evidence as to whether Appellant had been advised of his constitutional right to counsel, of his right to remain silent and advised that what if anything he said could be used against him. The trial court heard evidence on the matter and judicially determined that the same was not violative of Appellant's rights, privileges and immunities which appears to satisfy constitutional requirements. *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79.

We find no merit in any of the Appellant's contentions except under his Point II, in which he asserts that there is insufficient evidence of intent and malice. It appears to us that the introduction in to the evidence of State's Exhibit 4, above referred to, by the State itself precludes any inference of intent to kill on the part of Appellant. The attitude of Appellant immediately prior to his brutal and unwarranted assault upon his infant child and the injuries she sustained, which brought about her death approximately three days later, as revealed by said Exhibit, totally negates the State's contention that Appellant intended to kill his child. In support of the latter statement, we must remember that the State itself introduced Exhibit 4 in evidence and it thereby became bound as to its import, namely, that Appellant had lost his temper—"everything went boom and then I don't remember anything. Except after it was over, I came back to my senses and realized what had happened." Were this question eliminated, or if the same had not been put in evidence by the State, the accusatory agency, which must shoulder the full responsibility therefor, we might be able to reason and conclude that Appellant's intent to kill could be inferred, although we think this may be doubted. The long history of child abuse, including a six months' term at "The Farm", are not at all con-

ducive to sympathy for Appellant's plight, yet we must be objective in our appraisal of the facts and circumstances, as revealed by the record, despite our own inclinations as to the crime committed. Horrible though the crime is, repulsive though Appellant may be considered in his station in society, without a job, apparently permitting others to provide him food and shelter, he was without moral turpitude as to his innocent children, apparently expecting them to provide perfect attitudes in contradistinction to his own complete lack of responsibility and trustworthiness. A new statute to govern childbeaters and family abusers is needed for the protection of family life and society in general.

Under all the circumstances, we cannot equate Appellant's conduct with intent to murder. The hand, the fist, the belt are not considered to be deadly weapons per se, although any one of them, or other instruments, can be wielded in a manner to constitute them as deadly weapons. It is obvious that whatever instrument was used by Appellant, it resulted in being deadly; however, the Appellee, in the present case, is not entitled as a matter of law to an inference that the instrument used was deadly. Hence, this case is unlike many others where a deadly weapon, per se, indulges the necesary inference of intent. *Murphy* v. *State* (1869), 31 Ind. 511; *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. 2d 633.

This appeal, in our opinion, should be and is determinable upon the lack of evidence to permit the necessary inference of intent to kill by reason of the Appellee's own evidence, which in our opinion precludes such finding or inference. *Schlegel* v. *State* (1958), 238 Ind. 374, 150 N. E. 2d 563; *Todd* v. *State* (1951), 230 Ind. 85, 101 N. E. 2d 922; *Yessen* v. *State* (1950), 228 Ind. 316, 92 N. E. 2d 621.

It may be said, arguendo, that one charged with the commission of a crime is liable for the results of his own conduct and that proof of the crime itself will imply the intent or permit the inference on the part of the trier of the facts of

intent to commit the crime, or the necessary purpose to kill, as here, and with malice.

We think and hold that for purpose to kill, and with malice, there must obtain the free and uninterrupted flow from the crime itself to the necessary finding of statutory inference of purpose with malice; otherwise, conviction will be left to depend upon speculation or sheer "guess."

Our duty and obligation is to interpret the meaning and sense of statutes defining crimes and the application of such meaning and sense to the established facts in a case, and particularly a charged crime.

Here the State of Indiana, by its introduction into the evidence of State's Exhibit 4, placed before the jury uncontradicted and undisputed evidence pertaining to Appellant's state of mind. The State is bound thereby. Such evidence and its proper and reasonable interpretation serves to sever the line of communication from the precedent to the subsequent, from the mortal wounds inflicted to the inference of the purpose to kill with malice.

It is transparently clear to me that the lack of purpose to kill and with malice in the case now before us must be said, as a matter of law, will not support the verdict and judgment of second degree murder. For this reason only, I think that the judgment of the trial court should be reversed.

Jackson, J. concurs.

ON PETITION FOR REHEARING

ARTERBURN, J.—Appellant complains on petition for rehearing that we failed to dispose of a point raised by him, namely, the claimed error in the introduction of State's exhibit 4, which consists of a brief statement to the effect that "I lost my temper" when he struck his daughter. We think this point is well disposed of in Judge Mote's dissenting opinion, in which it is stated that the trial

court heard evidence which was conflicting with reference to whether appellant had been advised as to his constitutional rights, and found that there was no such violation.

The petition for rehearing is overruled.

Lewis, C. J. and Hunter and Jackson, JJ. concur.

Mote, J. dissents to the original majority opinion.

NOTE.—Reported in 237 N. E. 2d 376.