**Calvin E. HILL, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 182S37.

Supreme Court of Indiana.

March 9, 1983.

J. Timothy McCaulay, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

A jury convicted defendant-appellant, Calvin E. Hill, of the voluntary manslaughter, Ind.Code § 35–42–1–3(a) (Burns 1979 Repl.), of his three month old son, and he was sentenced to a twenty year term of imprisonment. In this direct appeal, he raises these issues:

(1) Whether the trial court committed error by admitting evidence of injuries sustained by the child prior to the injury leading to his death.

(2) Whether the evidence was sufficient to support the verdict.

(3) Whether the sentence imposed on the defendant was excessive.

The facts most favorable to the verdict show that on July 19, 1979, a son, Kedron, was born to Janice and Calvin Hill. Before and after the birth, defendant expressed doubts about his paternity. During the first week of Kedron's life, defendant began a practice of tickling, scaring and tossing the infant into the air in order to keep

him awake during the day so that he would sleep through the night without crying and disturbing defendant. Defendant cursed at the baby, calling him a "bastard" and a "son-of-a-bitch" and telling Kedron that he hated him. Once when Janice returned home after leaving Kedron in defendant's exclusive care, she discovered a deep cut on the infant's toe. Defendant claimed the injury was accidental. On another occasion, Janice returned and found the baby's diaper "full of blood". Defendant had no plausible explanation.

In one episode when the infant was a month old, defendant angrily "volunteered" to attend to Kedron when he awakened during the night. When Janice went to check on the situation, she found defendant rubbing the baby. When she expressed concern about defendant's method, he harshly thrust the baby at her. Shortly thereafter, numerous bruises were observed on the infant's face and back. A few days later it was discovered that Kedron had suffered a broken clavicle and humerus that were caused by the twisting or bending of these bones in a deliberate manner. Upon notification, the Adams County Public Welfare Department removed the baby from the care of the parents and placed him with a foster family. After six weeks, Kedron was returned to the defendant and his wife.

On October 18, 1979, two weeks after Kedron's return, defendant returned home from work and insisted on checking on the baby himself when Kedron began crying. He went into the baby's bedroom alone, and a few minutes later Janice heard a sound she described as a "hollow rap". Defendant's mother-in-law described the sound as a "dull thump." Janice immediately went to check the baby and found him crying loudly, sitting on the defendant's knee and bent over his hand, gasping for breath. Kedron then became pale and rigid and stopped breathing. He was rushed to a nearby doctor's office where he died several minutes later. An autopsy showed that he died as a result of a hemorrhage in the brain caused by a severe blunt blow to the head. The pathologist testified that this blow was not self-inflicted and was sus-

tained at the time defendant was alone with the baby and Janice and her mother had heard the unusual sound.

## I.

Defendant first argues that evidence of Kedron's prior injuries should have been excluded by the trial court as irrelevant and prejudicial. Prior to trial, the defendant filed a motion in limine to prevent any comment or testimony regarding previous injuries sustained by the child. The motion was denied and defendant again objected at trial to any such testimony. These objections were overruled and evidence was introduced showing that Kedron had suffered fractures of the right clavicle, right humerus, left humerus, left femur and left tibia at various times during his short life.

While evidence of crimes or criminal acts other than those charged is generally inadmissible as proof of the guilt of the defendant, such evidence may properly be introduced for the purpose of showing intent, motive, purpose, identity or a common scheme or plan. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. Prior acts of child abuse have been found admissible in cases in which defendants were charged with the killing of their infant children. *Worthington v. State,* (1980) Ind., 405 N.E.2d 913, *cert. denied,* 451 U.S. 915, 101 S.Ct. 1991, 68 L.Ed.2d 306; *Martin v. State,* (1978) 267 Ind. 583, 372 N.E.2d 181; *Corbin v. State,* (1968) 250 Ind. 147, 234 N.E.2d 261.

Defendant contends, however, that he has never admitted causing the prior injuries at issue here nor has the State proved that he did in fact commit them, and thus, even if they would otherwise be admissible under an exception to the general rule because they tend to show intent or guilty knowledge, they are irrelevant and should have been excluded. In *Howell v. State,* (1980) Ind., 413 N.E.2d 225, 226, we noted that for the admission of evidence of other offenses "there must be evidence of probative value showing that the defendant actually engaged in those acts." Defendant claims that this threshold test was not met in the instant case.

■ Contrary to defendant's assertions, the State did introduce substantial circumstantial evidence of probative value that defendant had engaged in acts leading to the infant's previous injuries. Defendant himself admitted that his son was an abused child. The testimony concerning his negative attitude toward and rough treatment of the baby, as well as the circumstances surrounding the appearance of the child's suspicious injuries, was probative of his commission of these acts. There was sufficient evidence before the jury to allow it to reasonably conclude that defendant's expressions of animus toward Kedron were translated into numerous episodes of child abuse over the child's short life. The State offered sufficient proof linking the defendant to the previous injuries to meet the requirement of *Howell, supra.* The trial court did not err in admitting evidence of these prior injuries.

## II.

■ Defendant next claims that the verdict of the jury was not supported by sufficient evidence. He contends that there was insufficient evidence that he committed the killing "knowingly", or "aware of a high probability that he [was] doing so," Ind. Code § 35–41–2–2(b) (Burns 1979 Repl.), as charged in the indictment for voluntary manslaughter. He asserts that the evidence presented was wholly circumstantial and not so conclusive so as to exclude every reasonable hypothesis of the defendant's innocence.

On appeal of verdicts based on circumstantial evidence, a reviewing court must only determine "whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Bruce v. State,* (1978) 268 Ind. 180, 253, 375 N.E.2d 1042, 1080, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. We find that a reasonable jury could conclude from the evidence adduced at trial and recited above of repeated episodes of verbal and physical abuse and injuries, that defendant committed this crime and did so knowingly.

## III.

Defendant's final contention is that the twenty year sentence imposed by the trial court for this class B felony was excessive. The basic sentence for a class B felony is ten years. Ind.Code § 35–50–2–5 (Burns 1979 Repl.). The statute provides that up to ten years may be added for aggravating circumstances or four years subtracted for mitigating circumstances. Defendant claims that there was insufficient evidence of any aggravating circumstances that would justify the imposition of an additional ten years.

■ It is within the trial court's discretion whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Logsdon v. State,* (1980) Ind., 413 N.E.2d 249; *McCawley v. State,* (1980) Ind., 409 N.E.2d 594. The record should disclose what factors were considered aggravating or mitigating when the basic sentence is increased or decreased. *Gardner v. State,* (1979) Ind., 388 N.E.2d 513; Ind.Code § 35–4.1–4–3 (Ind.Code § 35–50–1A–3, Burns 1979 Repl.).

■ After a sentencing hearing in which he heard witnesses for both sides testify as to possible mitigating and aggravating circumstances, the trial judge made a lengthy and thorough record of his sentencing decision and his reasons for assessing the maximum penalty for a class B felony. He examined every statutory mitigating factor with respect to this offense and this defendant and noted the defendant's lack of a criminal record as a possible mitigating circumstance. As aggravating circumstances he cited the extremely young age of the victim and the fact that Kedron was mentally and physically infirm. Ind.Code § 35–4.1–4–7(c)(6) (Ind.Code § 35–50–1A–7[c][6], Burns 1979 Repl.). He commented upon the defendant's lack of remorse or regret which he considered in determining that there was a risk that defendant would commit another crime, that he needed correctional or rehabilitative treatment best provided by commitment to a penal facility and that he did not have the ability to respond

affirmatively to probation or short-term imprisonment. *See, Coleman v. State,* (1980) Ind.App., 409 N.E.2d 647. The trial judge also noted that imposition of probation would depreciate the seriousness of the crime. Ind.Code § 35–4.1–4–7(c)(4) (Ind. Code § 35–50–1A–7[c][4] Burns 1979 Repl.).

We will not revise or strike down a sentence authorized by statute if the record reveals the trial judge's findings of aggravating and mitigating circumstances and if the sentence is not manifestly unreasonable. *Bish v. State,* (1981) Ind., 421 N.E.2d 608. A particularized statement of the reasons and circumstances considered was made here. The sentence cannot be considered manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2.

Defendant's conviction and sentence are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.