Jerry E. WATKINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 30S00–8708–CR–764.

Supreme Court of Indiana.

Sept. 21, 1988.

George J. Lewis, Lineback & Lewis, Greenfield, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of Murder, for which appellant received a sentence of sixty (60) years.

The facts are: On November 17, 1984, the nude body of the 11–year–old victim in this case was found in a partially wooded area in Hancock County. She last had been seen in the vicinity of her home on November 12, 1984. In June of 1985, appellant was charged in Marion County with the child molestation in September of 1984 of the victim in this case. A plea of guilty was entered to that charge and sentence was rendered accordingly. While confined to a holding cell behind the court, pursuant to the Marion County molestation case, appellant allegedly told Dennis Ackeret, who was being sentenced on an unrelated crime, that he had killed the girl for whose molestation he had just been sentenced. Ackeret testified that appellant told him he slit the girl's throat and left her for dead in some bushes in Hancock County.

About a month later, when Ackeret learned that such a crime had occurred, he

told police about appellant's statement. Following his conviction, appellant filed a motion to correct error wherein he stated, among other things, that he had newly-discovered evidence in the form of two Department of Correction inmates who would testify that Ackeret had told them that he lied at appellant's trial.

▮ Appellant claims the trial court erred in admitting redundant and highly inflammatory photographs of the nude body of the 11–year–old victim. We have reviewed each of these photographs and find that although there is some redundancy, each photograph in fact depicts slightly different evidentiary aspects. The photographs include scenes of the place where the body was found which show the nature of the area and the condition of the body. Other photographs taken at the morgue prior to autopsy show what is described as the fatal wound—a slashed throat—and various other stab wounds of the neck and chest as well as human teeth marks on one of the victim's breasts. Though photographs may depict revolting or gory scenes, such is the nature of a homicide. Photographs will not be excluded from evidence merely for that reason. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

▮ When various photographs are used to demonstrate evidence which is properly admitted when described verbally, the fact that they are cumulative to some extent does not bar their admission. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. We see nothing in this record to show that the photographs had a tendency to improperly influence the jury. Therefore we see no reversible error in their admission. *Anderson v. State* (1984), Ind., 466 N.E.2d 27.

▮ Appellant claims it was error for the trial court to revoke the order in limine thus allowing evidence of uncharged sexual misconduct with an older sister of the victim. The prosecution proceeded on a theory of circumstantial evidence with the major premise that appellant had a "depraved sexual instinct." As above pointed out, appellant had in fact entered a plea of guilty to molesting the victim in this case.

This molestation took place only two months prior to the victim's death.

Russell Givens, a co-worker of appellant, testified that appellant's wife visited their place of employment with her two younger sisters. Givens asked appellant who the younger girl was. Appellant replied that she was his sister-in-law and stated, "I've burned that and it's not too bad either." Givens understood this slang expression to mean that appellant had engaged in sexual intercourse with the girl.

This evidence, coupled with the fact that the victim had a tear in her vaginal area which the doctor testified was inflicted shortly before her death, and the further fact that laboratory tests disclosed the presence of sperm in her vagina at the time of her death was sufficient evidence to support the State's theory of appellant's "depraved sexual instinct." Thus, the evidence of appellant's sexual molestation of the victim's older sister, who was between fourteen and sixteen years of age at the times of her molestation and that he molested her in excess of ten times, was admissible as further evidence of his propensity for such conduct. *Grey v. State* (1980), 273 Ind. 439, 404 N.E.2d 1348.

▮ Appellant argues that the "depraved sexual instinct" rule should be applied only when a victim testifies in the case, and the evidence of uncharged sexual misconduct is used to support that testimony. He maintains that since no victim testified in this case, the rule should not have been invoked. However, appellant is in error in this regard. One of the landmark cases on this subject in Indiana is *Kallas v. State* (1949), 227 Ind. 103, 83 N.E.2d 769. In that case, the victim was deceased and the rule was invoked to show the defendant's propensity for deviate conduct. The trial court did not err in permitting evidence concerning appellant's molestation of the victim's older sister.

▮ Appellant claims it was error for the trial court to refuse to lift the order in limine regarding polygraph examinations after a police officer testified on cross-examination that an earlier suspect in the

case had been cleared in part by having passed a polygraph examination. This evidence was not presented by the State on direct examination.

On cross-examination, defense counsel pressed the police officer concerning his reasons for clearing the prior suspect. When the officer was pressed for further reasons for freeing the suspect, he answered, "He was given a test." To which counsel inquired, "What kind of a test?" To which the police officer answered, "Lie detector." Defense counsel went on to press the officer as to whether the suspect "pass[ed] it or did he flunk it?" To which the police officer answered, "He passed."

■ After this cross-examination, defense counsel took the position that since it had been disclosed that a suspect had taken and passed a lie detector test he should be permitted to show that appellant had also taken and passed a lie detector test. However, prior to appellant taking a polygraph test there had been no stipulation between the parties that the test should be admitted into evidence. Thus neither the fact that appellant had taken a polygraph test nor the result of such examination was available as evidence for either party. *Harris v. State* (1985), Ind., 481 N.E.2d 382; *Greenlee v. State* (1985), Ind.App., 477 N.E.2d 917.

Appellant claims he was the victim of an "evidentiary harpoon" as defined in *Pinkston v. State* (1982), Ind., 436 N.E.2d 306. However, there is no indication in this record that there was any intention on the part of the police officer of "harpooning" appellant. His answers to counsel's pressing questions were succinct and to the point. When he was pressed as to what kind of a test was given, he simply answered, "Lie detector." He did not purport to give the results of the test nor did he attempt to imply that anyone else had been given such a test. When he was pressed further as to the results of the test, he gave the succinct reply that the suspect had passed it.

The information presented to the jury was induced by the cross-examination conducted by appellant's counsel. The trial court was justified in refusing to lift the order in limine prohibiting evidence of the polygraph examination of appellant.

■ Appellant claims it was error to admit numerous newspaper articles regarding the charged crime. During the course of the trial, appellant called Paul David Frazzitta as a witness to testify that he was incarcerated with Dennis Ackeret, who had testified against appellant. Frazzitta described a conversation with Ackeret and another inmate in which Ackeret described a scheme for being released from jail. The plan was to find an unsolved crime, have a confederate research the newspaper coverage, and then use the information to convince the police that the schemer had knowledge of the crime.

It was after this evidence had been presented by appellant that the State offered newspaper articles reporting the crime to demonstrate that the account given to the police by Ackeret did not track the newspaper stories, which had certain inaccuracies, but did track the actual facts of the crime which could only have been recited by appellant. The trial judge admitted the newspaper articles with the admonition to the jury that they were not being admitted for the truth of the matters contained therein, but merely for the fact that they had been written the way they were.

■ It is within the discretion of the trial court to permit rebuttal evidence if it tends to explain, contradict, or disprove evidence offered by an adverse party. *Sims v. State* (1977), 267 Ind. 215, 368 N.E.2d 1352. The trial court did not err in permitting the State to attempt to rebut appellant's attempt to discredit the testimony of Ackeret.

■ Appellant further argues that the admission of the newspaper articles denied him his due process right to be tried by a jury free from outside media influence. However, as above pointed out, the trial court instructed the jury of the limited purpose for which the newspaper articles were being admitted. It was appellant who had opened the subject that Ackeret had obtained his information from newspaper

articles rather than from appellant. Under these circumstances, it cannot be said that his constitutional rights were impaired by the introduction of this evidence.

■ Appellant contends the trial court erred in refusing to grant his motion for judgment on the evidence at the conclusion of the State's case and at the conclusion of all of the evidence given in the trial. A motion for judgment on the evidence should be granted only in instances where there is a total lack of evidence as to the guilt of the accused or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the accused. *Burkhalter v. State* (1979), 272 Ind. 282, 397 N.E.2d 596. The facts in this case do not fall into that category. In addition to Ackeret's testimony concerning appellant's statements to him, there is sufficient circumstantial evidence in this record to submit the cause to a jury for determination. The trial court did not err in overruling appellant's motion for judgment on the evidence.

■ Appellant claims it was error to deny his motion for a new trial based on newly-discovered evidence and it was error to refuse to hold a hearing wherein he could have demonstrated his newly-discovered evidence. To support his claim of newly-discovered evidence, appellant submitted the affidavits of Bruce E. Jones and Paul E. Rork, which stated that Ackeret had told them he lied in testimony given at appellant's trial and the information he furnished had been given to him by a detective. Jones and Rork were inmates incarcerated with Ackeret and claimed that he had given them this information during their incarceration.

Appellant takes the position that Ackeret's testimony is the only testimony presented by the State which connected him with the crime. However, as above pointed out, there was an abundance of circumstantial evidence to connect appellant with this crime. It is true that Ackeret's testimony was extremely damaging to appellant. However, during the trial, Ackeret's untrustworthiness was clearly presented to the jury for its consideration.

Granting or denying a motion for a new trial based upon newly-discovered evidence is a matter within the discretion of the trial court. This Court will reverse such a denial only if it can reasonably be determined that on retrial a different result would be probable. *Davis v. State* (1988), Ind., 520 N.E.2d 1271.

■ To justify granting a new trial on the basis of newly-discovered evidence, it must be shown: 1) that the evidence has been discovered since the trial; 2) that it is material and relevant; 3) that it is not cumulative; 4) that it is not merely impeaching; 5) that it is not privileged or incompetent; 6) that due diligence was used to discover it in time for trial; 7) that the evidence is worthy of credit; 8) that it can be produced upon a retrial of the case; and 9) that it will probably produce a different result. *Johnson v. State* (1984), Ind., 464 N.E.2d 1309.

The affidavits by Jones and Rork, even if believed, are merely cumulative of the evidence presented at trial by appellant in an attempt to discredit Ackeret and to demonstrate that his testimony was fabricated. We would also point out that the affidavits of Jones and Rork are merely impeaching of Ackeret's testimony. Under these circumstances, we cannot say that the trial court abused its discretion either in denying the motion to correct error or in refusing to conduct a hearing on the matter. The trial court was well within its province in making its determination on the content of the affidavits; thus a hearing could serve no purpose. *Kindred v. State* (1988), Ind., 521 N.E.2d 320; *Keys v. State* (1979), 271 Ind. 52, 390 N.E.2d 148.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.