James L. CLEMENS, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 34S00–9103–CR–248.

Supreme Court of Indiana.

March 11, 1993.

Rehearing Denied May 11, 1993.

Susan K. Carpenter, Public Defender, Eugene C. Hollander, Indianapolis, Special Asst. to the Office of the State Public Defender, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Neglect of a Dependent Resulting in Serious Bodily Injury, a Class B felony. He received concurrent sentences of sixty (60) years and ten (10) years, respectively.

The facts are: In November of 1989, appellant and his wife lived in Kokomo with their three children, including Jerrel and Jordan, their three-year-old twins. Appellant, laid off from his job at a packing plant in Logansport, served as primary caretaker for the children while their mother worked second shift at Chrysler. Appellant had surreptitiously moved back in with his wife and children in October 1989 after having been court-ordered in a CHINS case the previous November to reside elsewhere. Since then numerous "accidents" had befallen Jerrel, including falling off his bunk bed and down the basement stairs, which had resulted in serious bruising for which his parents had failed to seek medical treatment. On November 2, Mrs. Clemens planned to take the children to the doctor for treatment of a fungal infection as well as a spot on Jerrel's leg. Appellant told her not to show Jerrel's leg to the doctor for fear he would notify child welfare authorities. Evidence showed that appellant would become enraged and resort to corporal punishment whenever one of the twins would have a potty-training accident.

When Mrs. Clemens went to wake the children that morning, she found to her surprise that appellant had already left the house taking Jerrel with him. She took the other children to the doctor at the appointed time, and when they returned home about 1:30 p.m. she found a suicide note, appellant lying on the kitchen floor, and rat poison all around. Appellant's family then arrived, explaining he had called them about a car accident involving Jerrel. After authorities were notified, appellant was treated at the scene and at the hospital. He was released when his only injuries were found to be a small bump on his forehead and a small abrasion on his chest. Jerrel, however, was found to be dead, covered up in the back seat of appellant's car.

Appellant explained he had taken Jerrel along with him on a job interview and while driving, he slammed on his brakes to avoid hitting another car which caused Jerrel, who was standing on the front seat, to be thrown into the windshield. Appellant claimed that because Jerrel was having trouble breathing, he administered CPR and drove back to Kokomo to find a hospital. When Jerrel died on the way, appellant drove on home because he feared no one would believe his story. He then telephoned his parents in Muncie and left a suicide note for his wife, although he could not bring himself to commit suicide.

Investigation revealed no blood on the car or on Jerrel's body. He did have bruises about his neck and upper body and small cuts on his forehead, chest and hand. Some of the bruises had not been observed previously by his mother. An autopsy revealed numerous bruises and injuries of various ages, including a lacerated pancreas and torn mesentery (abdominal connective tissue). The cause of death was determined to be battered child syndrome evidenced by extensive blunt force abdominal trauma with resultant internal bleeding. These injuries to Jerrel were found to be remarkably similar to ones suffered the previous year by his twin brother, Jordan.

On November 6, 1989, both appellant and his wife were charged by information with neglect of a dependent resulting in serious bodily injury. On November 13, the autopsy report was released to the police and the

following day, appellant was charged in a second count with murder.

Appellant contends the trial court erred in denying his motions for change of venue from Howard County, for a test jury to demonstrate the need for a change of venue, and for sequestration of the jury. In support, he details the extensive pretrial publicity, including numerous newspaper articles and radio news reports disseminated from the day after Jerrel's death up to the day before trial a year later. The news coverage reported events as they unfolded and became known to the authorities. They reported in specific detail information including appellant's interview with police and the coroner's conclusion that appellant's accident scenario "is to be considered absolutely absurd."

In a pretrial hearing, appellant presented evidence of the extensive pretrial publicity and requested a test jury to demonstrate the existence of community bias and prejudice. At the State's request, the trial court deferred his ruling until *voir dire* had been completed. The judge then concluded that appellant's trial had not generated any more publicity than had previous cases in the county, and that past test juries had not been helpful. He denied appellant's motions. Appellant then moved to sequester the jury, which also was denied. He maintains he was denied a fair trial due to community outrage as evidenced by the widespread media coverage, the fact that trial counsel had personally lost friends merely by representing appellant, and the fact the trial court on its own excused fifteen prospective jurors from the panel of sixty at the outset of *voir dire.*

█ As appellant acknowledges, citing *Gillie v. State* (1984), Ind., 465 N.E.2d 1380 and other cases, in order to obtain a change of venue he bears the burden of showing that community prejudice exists which would prevent his obtaining a fair trial in that community, and to prevail on appeal from the denial of his motion he must demonstrate an abuse of the trial court's discretion. As the State points out, citing *Evans v. State* (1990), Ind., 563 N.E.2d 1251, to establish such an abuse of discre-

tion, appellant must demonstrate both prejudicial pretrial publicity and juror inability to render an impartial verdict on the evidence.

█ To support a change of venue, appellant must show the publicity contained either inflammatory material not admissible at trial or misstatements or distortions of the evidence. *Id.* This appellant has not done; the pretrial publicity in the instant case consisted only of factual information later presented during trial; while undoubtedly prejudicial, it was not "prejudicial" in a change-of-venue context as it was merely cumulative of evidence admissible at trial. Nor has appellant satisfied the second prong by showing the seated jurors were unable to set aside any preconceived notions of guilt and decide the case on the evidence. Appellant cites no portion of the *voir dire* revealing unresolved partiality on the part of any jurors who heard his trial. Appellant has failed to demonstrate an abuse of the trial court's discretion in denying his motion for change of venue.

█ As for appellant's motion for a test jury, in *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 294, *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), this Court stated: "Defendant cites us to no authority for a test jury, and we know of none. Such a body is unknown to our legal process. Defendant does not tell us how it is to be drawn, constituted or to deliberate. We find no error in the court's denial of this procedure." Later, in *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1092, this Court concluded "that while a trial court is not obligated to grant a request for a test jury, the court is not prohibited from granting it either. Such a request lies within the sound discretion of the trial court." Appellant has not demonstrated how he was harmed by the failure to conduct a test jury to quantify community bias. He has shown no prejudice on the part of the seated jurors. We thus find no abuse of discretion in the trial court's denial of his motion for a test jury.

█ As for appellant's motion to sequester the jury, he recognizes that in all cases

not charged as a capital offense, sequestration is a matter of trial court discretion, citing *Harris v. State* (1985), Ind., 480 N.E.2d 932, and that he now shoulders the burden of establishing whether any jurors were actually exposed to prejudicial publicity, citing *Sanders v. State* (1981), Ind., 428 N.E.2d 23. Appellant argues the aforementioned pretrial publicity satisfies his burden, particularly the lengthy newspaper article recounting the sequence of events published the day before trial began.

For purposes of jury sequestration motions, however, the publicity at issue is not pretrial coverage but rather that generated and reported during the trial itself; to demonstrate prejudicial exposure, appellant must show that someone on the jury was exposed to media coverage during the trial and that sequestration would have avoided particular juror prejudice. *See Rankin v. State* (1990), Ind., 563 N.E.2d 533. Having failed to establish any such exposure, appellant has not demonstrated any abuse of discretion in denying his motion to sequester the jury.

The trial court did not err in denying appellant's motions for change of venue, sequestration and a test jury.

Appellant contends the trial court erred in refusing to give his tendered instruction on the defense of accident. His Proposed Final Instruction No. 8 would have informed the jury that prohibited conduct may be excused when it is the result of an accident and defined the three elements of the affirmative defense of accident. On review of the trial court's refusal of a tendered instruction, we apply a tripartite test: 1) whether the instruction correctly states the law; 2) whether there is evidence in the record to support giving it; and 3) whether its substance was covered by other instructions given. *Matheney v. State* (1992), Ind., 583 N.E.2d 1202, *cert. denied*, —— U.S. ——, 112 S.Ct. 2320, 119 L.Ed.2d 238. As the State concedes, the pattern instruction tendered by appellant is a correct statement of the law.

The dispute is whether the evidence supported giving the instruction. Appellant argues his traffic accident scenario, as related through the testimony of his wife, sister, mother, two policemen and a paramedic, amply suffices to support giving his instruction. It is true that a defendant is entitled to an instruction on any defense which has some foundation in the evidence. *Smith v. State* (1989), Ind., 547 N.E.2d 817. The situation in the case at bar, however, parallels that in the case of *Brown v. State* (1985), Ind., 485 N.E.2d 108, 111, in which Justice Shepard wrote:

"While a criminal defendant has the constitutional right not to testify at trial, the defendant has the burden of proof on any affirmative defense. In this case the appellant did not testify at trial or present other evidence to support his affirmative defenses. While defendants have the prerogative to choose the trial strategy deemed best for them, appellant cannot make exculpatory statements to a court appointed psychiatrist, present no evidence on his defense, preclude the State from cross-examining appellant's assertions made through the psychiatrist, and then expect such self-serving statements to constitute substantive evidence for his tendered instructions."

Here, where appellant never testified nor offered any evidence in his defense, and where all the medical evidence flatly concluded that Jerrel's death was no accident, we conclude as in *Brown, supra* that appellant's secondhand, self-serving explanation, even where reiterated through several different witnesses, does not constitute substantive evidence to support his tendered instruction. The trial court thus did not err in refusing it.

Appellant contends the evidence is insufficient to support his convictions. He bases his argument in part upon his additional contention that the trial court erred in admitting evidence of similar injuries inflicted the previous year upon Jerrel's twin brother, Jordan, whose hospitalization in November 1988 led to a CHINS (CHild In Need of Services) action resulting in a court order forbidding appellant to have private visitation with Jordan. Over appellant's objection, testimony was given by numerous wit-

nesses concerning the injuries to Jordan, and Dr. Jeff Squires, the pathologist who performed the autopsy on Jerrel, testified the pattern of abdominal blunt-force injuries found on his twin the year before was "amazingly similar except that Jordan had fewer of them."

In a two-pronged attack on the admissibility of the evidence concerning Jordan, appellant first points out that "no witness testified that they ever saw the Defendant inflict any type of injuries upon either Jerrel or Jordan," and thus no proof he was responsible for the injuries to Jordan was ever introduced, so that it "clearly was improper for the State to be allowed to encourage the jury to find the Defendant guilty in this cause based upon the non-proven, non-charged, non-asserted assumptions about acts attributed to the Defendant in Jordan's CHINS action." Also, citing *Johnson v. State* (1989), Ind.App., 544 N.E.2d 164, which in turn relies upon this Court's decision in *Clark v. State* (1989), Ind., 536 N.E.2d 493, appellant argues that regardless of whether he was proven to have inflicted them, Jordan's injuries were generally inadmissible to show he had a propensity to beat his twin sons—that even if shown to be a child abuser, "principles of American jurisprudence insist a defendant be tried for what he has done rather than for what he is." *Johnson, supra* at 171.

In a recent opinion eliminating the depraved sexual instinct exception to the inadmissibility of evidence of prior bad acts, this Court adopted in its entirety Federal Rule of Evidence 404(b), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

*Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1336 n. 4.

*Lannan* has been held to apply to cases pending on direct appeal when *Lannan* was decided. *Pirnat v. State* (1992), Ind., 600 N.E.2d 1342.

■ The purpose specified above, to show the absence of mistake or accident, seems tailor-made to allow the admission of evidence of appellant's abuse of Jordan to rebut his claim that accidental injuries were the cause of the other twin's death. In *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, we held evidence of the defendant's previously uncharged drowning of her first child to secure insurance proceeds was relevant to rebut her claim of accident regarding the drowning death of her second child, such that joinder of the charges at the trial court's discretion was appropriate.

■ As alluded to above, appellant argues there was not sufficient proof shown at trial to connect him to Jordan's injuries to make them relevant to his perpetration of Jerrel's injuries. As appellant correctly maintains, there must be sufficient evidence at trial to support a finding by the jury that the accused committed the similar act for it to be admissible under F.R.Evid. 404(b). *Huddleston v. United States* (1988), 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771. Indiana law is in accord with this requirement. *See, e.g., Hill v. State* (1983), Ind., 445 N.E.2d 994.

However, direct evidence that the defendant perpetrated the prior bad act is not required. "[S]ubstantial circumstantial evidence of probative value" is sufficient, and evidence of the defendant's "negative attitude toward and rough treatment of the baby, as well as the circumstances surrounding the appearance of the child's suspicious injuries," has been held probative of the defendant's commission of the similar acts. *Id.* at 996. Nor is testimony by the victim of the prior bad act required. *Watkins v. State* (1988), Ind., 528 N.E.2d 456.

As appellant maintains, the instant case presents no direct evidence of appellant's battery of either Jordan or Jerrel, but the

record contains a wealth of circumstantial evidence, including testimony as in *Hill, supra* regarding appellant's attitude toward the twins and the suspicious appearance of their injuries, to justify an inference that appellant indeed was responsible for the injuries inflicted upon Jordan. Such evidence thus was admissible in his prosecution for Jerrel's death to show *modus operandi*, identity, or, under the federal formulation, absence of mistake or accident. *Lannan, supra.*

■ Appellant maintains the evidence generally is insufficient to support his convictions. While acknowledging the evidence does establish that Jerrel had been beaten over a long period of time, appellant argues it does not establish that he inflicted the fatal blows or that they were inflicted with the intent to kill the child. He correctly cites *Smith v. State* (1984), Ind., 465 N.E.2d 1105 for our standard of sufficiency review: we look only at the evidence most favorable to the State and all reasonable inferences to be drawn therefrom; if the existence of each element of the crime may therein be found beyond a reasonable doubt, the verdict will not be disturbed. On review, we neither weigh conflicting evidence nor judge the credibility of witnesses.

Appellant attempts to distinguish the situation in *Horne v. State* (1983), Ind., 445 N.E.2d 976, 978 wherein we quoted an earlier case which stated:

" 'Anyone with reasonable judgment would know that one of the blows of the magnitude of any of these numerous blows could have fatally injured this child, who apparently was sick at the time. Where such blows of such magnitude are repeated, any jury would have a right to conclude that the perpetrator intended to kill. Malice as a legal inference may be deduced from a perpetration of any cruel act, and the law presumes an individual intends the consequences of his acts.' *Corbin v. State* (1968), 250 Ind. 147, 150, 234 N.E.2d 261, 262."

In the case at bar, the medical testimony made it clear Jerrel's injuries were no accident, and there was plenty of circumstantial evidence, including evidence of similar abuse inflicted upon a sibling as in *Davidson, supra,* to identify appellant as the perpetrator of the fatal blows and to show he failed to secure medical attention for his child. His attempt to have us reweigh the evidence and find his version the more persuasive is to no avail. *Smith, supra,* 465 N.E.2d 1105.

The evidence is sufficient to support appellant's convictions for murder and neglect of a dependent.

Appellant contends the trial court erred in giving the jury inadequate instruction on circumstantial evidence. The Court's Final Instruction No. XIII defined direct and circumstantial evidence and gave examples of the latter, and went on to explain:

"Circumstantial evidence is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a Defendant, the jury must be satisfied of the Defendant's guilt beyond a reasonable doubt from all of the evidence in the case."

Appellant cites cases including *Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331, *mod. on other grounds,* 272 Ind. 647, 403 N.E.2d 828, for the proposition that circumstantial evidence relied upon by the jury must exclude every reasonable hypothesis of innocence beyond a reasonable doubt, and that where all of the evidence is circumstantial, failure to give such an instruction constitutes reversible error. Noting that failure to object to a defective instruction or to tender a correct one generally waives any error in that regard, *Whittle v. State* (1989), Ind., 542 N.E.2d 981, appellant nevertheless argues the omission here amounted to fundamental error due to "the exclusive circumstantial nature of the evidence presented in this cause regarding who inflicted the injuries on the child, and the state of mind of the individual at the time that said injuries were inflicted."

■ As the State points out, appellant's desired instruction must be given only where the evidence is wholly circumstantial. *Cox v. State* (1985), Ind., 475

N.E.2d 664. In *Spears, supra* there was no direct evidence linking the fight to the victim's injuries. Here, appellant's admission that he was present when Jerrel sustained his mortal injuries, as well as the pathologist's testimony that those injuries must have been inflicted intentionally, constitute direct evidence going to the issues of identity and intent, respectively. *Cox, supra.* The absence here of any "no reasonable hypothesis of innocence" instruction was not fundamental error.

■ Appellant contends his convictions must be reversed due to ineffective assistance of counsel. He accurately recites our standard of review of effectiveness of counsel, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and *Mftari v. State* (1989), Ind., 537 N.E.2d 469.

Appellant's first allegation of ineffectiveness is that it was error to fail to instruct the jury that they must exclude every reasonable hypothesis of innocence in order to convict him on circumstantial evidence alone. He maintains counsel fell below standard in failing both to object to the absence of such a charge in the court's instruction and to tender such an instruction on appellant's behalf. However, every reasonable hypothesis of innocence propounded by appellant, at trial or here on appeal, was foreclosed by the undisputed medical evidence that Jerrel's death was no accident. The trial court, as decided above, therefore need not have given any such instruction; it thus was neither substandard performance nor prejudicial to fail to tender one and accordingly did not amount to ineffective assistance. *See Hunter v. State* (1991), Ind., 578 N.E.2d 353.

■ Appellant's next allegation of ineffectiveness is that trial counsel failed to request a change of venue from the judge as well as from the county. Noting the trial judge was the same one who had presided over the CHINS action involving Jordan, appellant notes the court here admitted evidence of that action and went on to rely upon appellant's failure to comply with his "stay-away" order as grounds to aggravate his sentence. Even had counsel

filed such a motion, however, it would have been within the trial court's discretion to grant or deny it. *Zavesky v. State* (1990), Ind.App., 558 N.E.2d 1124. It is presumed that judges have the ability to remain objective even after having been exposed to information which might tend to prejudice lay persons. No bias or prejudice is established by the mere fact the defendant previously has appeared before that judge. *Stanger v. State* (1989), Ind.App., 545 N.E.2d 1105.

Neither the fact that Judge Brubaker had ordered appellant to refrain from contact with Jordan, nor the fact appellant's failure to abide by that order was used in aggravation of his sentence, shows bias on the part of the trial judge. *See Reynolds v. State* (1991), Ind.App., 575 N.E.2d 28. Absent such a showing, appellant has failed to demonstrate that a request for change of judge would have been granted, *Hunter, supra,* or that he was prejudiced by counsel's failure to so request, which thus did not constitute ineffective assistance. *See Young v. State* (1989), Ind., 537 N.E.2d 30.

■ Appellant asserts counsel was ineffective for neglecting to object to the fact the murder information failed to specify how the alleged murder occurred. Appellant, however, cites no authority and does not mention why this was substandard performance nor how he was prejudiced thereby. Such failure to present cogent argument waives error on this point. Ind. Appellate Rule 8.3(A)(7); *Joseph v. Lake Ridge School Corp.* (1991), Ind.App., 580 N.E.2d 316. He moreover fails on the merits of this claim, for as the State points out, citing *Patterson v. State* (1986), Ind., 495 N.E.2d 714, where, as here, the probable cause affidavit sufficiently apprised the defendant of the means and manner of death alleged by the State, appellant suffered no prejudice thereby. Accordingly, no ineffectiveness has been shown. *Sarwacinski v. State* (1991), Ind.App., 564 N.E.2d 950.

■ Appellant asserts counsel was ineffective in failing to aggressively cross-examine the State's witnesses, questioning

only nine of the eighteen, and then only "in a limited manner." Here again, appellant cites no authority and simply fails to make any cogent argument on this point, making absolutely no showing of how he was prejudiced nor of what was to be gained by more extensive cross-examination as was demonstrated successfully in *Smith, supra*, 547 N.E.2d 817. He thus has waived any error, App.R. 8.3(A)(7), and has failed to show the prejudice needed to establish ineffectiveness. *See Wood v. State* (1987), Ind., 512 N.E.2d 1094.

 Appellant's final instance of alleged ineffectiveness is that counsel was substandard in failing to advise him properly of the consequences of requesting no instructions on lesser-included offenses. The record reflects, however, that counsel informed the court during the settling of instructions that while in a murder case he usually requested instructions regarding voluntary and involuntary manslaughter, in the present case the defendant did not want any instructions on lesser-included offenses. As a matter of trial strategy, we cannot say the decision to follow appellant's wishes and request no lesser-included offense instructions was ineffective assistance. *See Young v. State* (1985), Ind., 482 N.E.2d 246; *Sarwacinski, supra*.

Appellant has not shown ineffective assistance of trial counsel.

The trial court is affirmed.

SHEPARD, C.J., concurs.

KRAHULIK, J., concurs in result.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

I would affirm Clemens' conviction for Neglect of a Dependent, but reverse his conviction for Murder, because of the error in failing to give Clemens' proposed and tendered jury instruction on the defense of accident. Since I agree that the evidence was sufficient to convict on both charges, I would remand for a new trial of the Murder charge or other consistent proceedings.

The standard to be applied by the trial court and the appellate court when determining whether there is a sufficient evidentiary basis to give an instruction on one of the defenses available in criminal cases was settled in *Williams v. State* (1980), 273 Ind. 105, 402 N.E.2d 954. In that case, we considered the question with respect to the defense of intoxication, and concluded:

> That basis exists where the evidence of intoxication, if believed, is such that it could created a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent. If it could do so the refusal of the instruction is error.

*Id.*, 402 N.E.2d at 956. Here, the State employed appellant's own pre-trial statements as evidence against him. In those statements, heard by the jury, he said that he had abruptly braked the car, hurling the child into the windshield. In the aftermath of this injury, the child showed signs of having difficulty breathing, so Clemens had attempted CPR to restore breathing, though he did not know how to do so. The State also presented additional evidence that corroborated Clemens' statements. There was evidence that the windshield of the vehicle was cracked at the point described by Clemens in his story, and that several blondish colored hair follicles were removed by police from the windshield crack. While this is juxtaposed with substantial contradictory evidence at trial, and while it could not possibly serve as a defense to beatings administered to the child prior to the day of death, it does satisfy the *Williams* standard in the trial of the murder charge. That charge alleged, in general terms, only that appellant Clemens knowingly or intentionally killed the child on the date of the child's death, without any specification of the means by which this was accomplished. Upon the evidence, the defense instruction was warranted, and it was reversible error to fail to give it.

DICKSON, J., concurs.