**STATE, Plaintiff-Appellee, v. POWELL, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3818.   Decided November 18, 1955.

William A. Ambrose, Pros. Atty., Jack W. Nybell, John R. Hooker, Asst. Pros. Attys., Youngstown, for plaintiff-appellee.

Eugene B. Fox, Marvin Traxler, Youngstown, for defendant-appellant.

**34**

## OPINION

By PHILLIPS, PJ.

Defendant appealed to this court on questions of law from a judgment of the court of common pleas entered upon a finding of guilty of murder in the second degree made by three judges thereof before whom, by waiver of trial by jury, defendant elected to be tried upon an indictment for murder in the first degree returned by the Grand Jury of Mahoning County.

The case was not properly appealed as one on questions of law and fact. Accordingly, the words "and fact" were stricken from defendant's notice of appeal and the appeal was retained, heard, submitted, and will be determined as an appeal on questions of law.

No witness other than defendant testified in the trial court as to his acts and those of decedent, Fred Mackey, during a fight between them shortly before the latter's death at 6:45 A. M. on April 28, 1955.

Defendant, a long time laborer in the blast furnace of the Youngstown Sheet and Tube Company, Brier Hill Plant, testified that on April 28, 1955, at approximately 4:30 A. M. he entered such plant to see if he could find any scrap which might be of value; that as he walked through the parking lot and past a pile of bricks stored at one end thereof decedent Mackey, who was defendant's one time foreman, took hold of him by the belt from behind and said he was going to take him to the Police of the Youngstown Sheet and Tube Company at the main gate of its Brier Hill Plant; that defendant unsuccessfully attempted to release himself from decedent's hold, during which attempt he said decedent struck him in the left eye; that thereafter both defendant and decedent struck each other a number of blows during a period of five minutes and over a distance of about one hundred fifteen feet.

Further defendant testified that after decedent struck him that "that's when I got mad" and:—

"* * * I commenced to fighting him back then and we kept fighting each other until I got the best of him. I knocked him down and knocked him up against a car that was parked in the parking lot and I think he fell and hit his head on the front bumper and then he hit the ground and I commenced hitting him with my fist as he was on the ground. * * *."

There is evidence found in the coroner's findings, and testified to by him at the trial in the court of common pleas, that decedent's body bore evidence of:—

"1. Head and face markedly swollen and distorted.

"2. Head and face covered with multiple severe abrasions, bruises and lacerations.

"3. Bilateral periorbital ecchymosis.

"4. Fractured nose.

"5. Multiple fractures of the lower mandible (could be palpated).

"6. Contusions and discoloration of the left and right anterior chest.

"7. Numerous superficial cuts on the dorsum of both hands and on the elbows.

"8. Autopsy revealed extensive subarachnoid hemorrhage most

marked in the left occipital area with multiple extensive basilar and left parietal fracture.

"9. Extensive bilateral intercostal hemorrhage with multiple bilateral rib fractures."

Defendant testified that after beating decedent he left him and the property of the Youngstown Sheet and Tube Company, at which time decedent was still alive; and that he did not intend to kill decedent at any time, and did not know he was dead until he read the account of his death in the newspapers the next day.

There is evidence that about 5:45 A. M. of April 28, 1955, an employee of the Youngstown Sheet and Tube Company found decedent lying near an automobile in the parking lot of the Youngstown Sheet and Tube Company Brier Hills Works, and notified the police department of that company, as a result of which decedent was taken to the South Side Hospital where he died about fifteen minutes after admittance at 6:30 A. M. on that day.

Also, there is evidence that defendant was a peaceful and quiet person, never engaged in fighting, never created disturbances, was forty-eight years of age, and had no criminal record except one traffic violation and an arrest for stealing brass.

The Coroner of Mahoning County testified that in his opinion defendant used no weapons on decedent, and testified that in his opinion "for what it may be worth" that defendant neither kicked nor stepped on him.

Defendant contends that the finding and judgment of the court of common pleas is against the manifest weight of the evidence, is not sustained by law, and accordingly contrary thereto; that the state wholly failed to establish beyond a reasonable doubt that defendant "purposely and maliciously" killed decedent as required by §§2901.05 and 2901.06 R. C.; and that the trial court should have sustained his motion to reduce the charge against defendant from second degree murder to manslaughter in the first degree.

"No person shall purposely and maliciously kill another. Whoever violates this section, except in the manner described in §§2901.01, 2901.02, 2901.03, 2901.04 R. C., is guilty of murder in the second degree and shall be imprisoned for life." Sec. 2901.05 R. C.

"No person shall unlawfully kill another. Whoever violates this section, except in the manner described in §2901.01 to §2901.05 inclusive, R. C., is guilty of manslaughter in the first degree, and shall be imprisoned not less than one nor more than twenty years." Sec. 2901.06 R. C.

Defendant argues that the state did not establish purpose on his part to kill decedent; that there exists at least a reasonable doubt as to defendant's purpose; that though available used no weapon on and did not kick nor step on decedent; nor prove that the injuries sustained by decedent necessarily caused his death; that the evidence introduced by the prosecution substantiated the defendant's version of what took place; that the fact that the fight covered a distance of one hundred fifteen feet verifies defendant's contention that he was trying to escape; that the fact that there were blood marks on the auto next to which

the body of the deceased was discovered makes that look "as if a man fell against it," and verifies the defendant's contention that he was trying to escape from decedent, had no reason to kill him; and that he was not a vicious person.

In support of his assigned ground of error that the finding and judgment of the trial court is against the manifest weight of the evidence defendant states that the state "must prove beyond a reasonable doubt that the defendant purposely and maliciously killed" decedent, which he argues the evidence fails to establish.

The burden of plaintiff's contention and argument is that the state failed to prove the element of his intent or purpose to kill decedent, and accordingly that his conviction of murder in the second degree should be reduced to manslaughter.

It is conceded that his intent or purpose to kill decedent is an essential element of the crime of second degree murder in the state of Ohio, and that such element must be established beyond a reasonable doubt. See **Hagan v. State, 10 Oh St 459; Jones v. State, 51 Oh St 331;** and Munday v. State, 5 C. C. (n. s.) 656.

It is the well established law in Ohio that:—

"The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." **State v. Huffman, 131 Oh St 27,** syllabus 4.

In **State v. Salter, 149 Oh St 264,** the Supreme Court approved the holding of the court in the case of State v. Huffman, supra.

"The fists may not, indeed, be regarded generally as a deadly weapon; but they become most deadly by blows often repeated, long continued, and applied to vital and delicate parts of the body of a defenseless, unresisting man on the ground. * * *" 15 A. L. R. page 676.

In the case under consideration defendant, a powerfully built physically fit man, aged forty-eight years, weighing one hundred ninety pounds, by his own admission, continued to beat decedent, a man fifty-eight years old weighing one hundred sixty-five pounds, as he lay on the ground helpless, because he feared decedent would rise and continue the fight, but at a time when decedent had no hold on him and he was not then trying to get away from decedent. Such acts of defendant spell for us the intention of defendant to purposely kill decedent.

In our opinion the nature of the assault and the number and character of the wounds inflicted justified the trial court finding the specific intent of defendant to kill decedent, whether defendant inflicted the blows with deadly weapons or with his fists; and that defendant's intent to take decedent's life is not rebutted by the absence of the use of deadly weapons.

"Although absence of deadly weapons deprived commonwealth of presumption of intent to kill which their use would have afforded in prosecution for murder of first degree, it cannot be affirmed as legal conclusion that intent to take life is rebutted by absence of deadly weapon." 148 Atlantic, 501, Commonwealth v. Guida.

"Where no deadly weapon was used in killing deceased, relative size and strength of the parties, manner of attack, and wounds inflicted, might be considered in determining whether defendant intended to kill deceased." McDonough v. State, 178 S. W. (2d) 863.

This case presents the situation where defendant admittedly looking for scrap which might be of value on the property of his employer brutally beating his one time foreman, and preparing to do anything that was necessary to make his escape from his employer's property, asking this court to find him guilty of manslaughter. It must be remembered that defendant left decedent there in a deserted mill yard at 4:00 A. M. with multiple fractures of the skull, multiple fractures of the jaw, multiple fractures of the ribs, a fractured nose, and lacerations and contusions that made him unrecognizable by men who had worked with him for eighteen years.

From what we have said it is apparent that we find no error prejudicial to the defendant in any of the respects urged by him in his assigned grounds of error or argument.

The judgment of the court of common pleas is affirmed.

NICHOLS and GRIFFITH, JJ, concur.