OPINION
Defendant-appellant, Jamie Clay, appeals from a judgment of the Franklin County Court of Common Pleas, finding him guilty of attempted murder and felonious assault.
Pursuant to a bind-over from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, defendant was indicted on one count each of attempted murder and felonious assault. According to the state's evidence, Charles Casto and his employer, George Dilworth, worked as home remodelers. On June 16, 1997, they were painting the inside of a house in the Hilltop area of Columbus. After completing work for the day, Casto and Dilworth went to four bars where they consumed six to eight alcoholic beverages.
Casto and Dilworth left the bar in a friend's car; the friend, too, worked for Dilworth. While they were negotiating a "jog" in the road, a ladder fell off the side of the car. As they secured the ladder to the car, they heard a comment in the background. They looked up the street and had "words" with three or four men who were there. Casto and Dilworth turned around to head back to the car, but as Casto reached the car he realized Dilworth was not with him. When he looked back, he observed the men they had seen were fighting with and beating Dilworth. Dilworth was on "all fours," and defendant was kicking Dilworth in the mid-area and in the head.
Casto attempted to use the car as a weapon, but because it twice stalled, he lost sight of Dilworth. He found Dilworth lying on the ground, approximately twenty feet from where the fight occurred.
Frank Caplinger, a resident of the area at the time, observed the fight. According to Frank, after the exchange of words, Dilworth rushed one of the men, who hit Dilworth. Defendant came over and began to hit Dilworth in the face. As they continued, Harvey Griffith exited his house and hit Dilworth in the back of the head a couple of times with what turned out to be a table leg. Dilworth fell to the ground. Frank's mother, Grace, who had been sitting on the porch of her home, heard someone yell, "[t]hey're killing him." (Tr. 86.) She left her porch to see what was occurring, and saw Dilworth "laying in the middle of Doren Avenue, close to the middle, and Jamie Clay was kicking him from side to side in the head and then stomp him in the face." (Id.) Defendant kicked Dilworth no less than ten times and no more than twenty times. She screamed, "Jamie, stop, you will kill him." (Tr. 87.) Someone else also said "[t]hat's enough." (Id.) Defendant, however, "kept viciously kicking him until he got it out of his system," and "jumped straight up and down and said, `I fucked him up, I fucked him up.'" (Tr. 88.) Someone dragged Dilworth out of the middle of the street, Casto put him in the car, and someone drove him to the hospital.
Dilworth was comatose when he arrived at the emergency room, having suffered severe brain trauma. Dilworth remained in a coma for several weeks. Indeed, his surgeon did not think he would survive. Although he regained consciousness, he remains "very, very severely impaired." (Tr. 119.) Dilworth most likely will never again be completely normal. According to the doctor, Dilworth's injury likely occurred by a blow to the head with a blunt instrument such as a revolver, baseball bat, concrete floor, or anything with a big enough impact to the skull to cause acute subdural hemotoma. Additional kicking after loss of consciousness likely increased damage to the brain. The jury returned a guilty verdict on both counts, and the trial court sentenced defendant accordingly. Defendant appeals, and assigns the following errors:
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT, JAMIE CLAY'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
II. THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY.
 III. THE JURY ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY OF ATTEMPTED MURDER AND FELONIOUS ASSAULT, AS THEIR DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant's first and third assignments of error are interrelated and thus will be addressed jointly. Together they challenge (1) the sufficiency of the evidence, asserting the trial court should have granted defendant's Crim.R. 29 motion, and (2) the manifest weight of the evidence.
Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Apanovitch (1987), 33 Ohio St.3d 19, 12; State v. Dennis (1997),79 Ohio St.3d 421, 430. In reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v.Wolfe (1988), 51 Ohio App.3d 215, paragraph one of the syllabus;State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported. See, also, State v. Brown (1994), 99 Ohio App.3d 604,607, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
To establish attempted murder pursuant to R.C. 2923.02
as it relates to R.C. 2903.02, the state must establish that defendant "purposely engaged in conduct which, if successful, would have caused [victim's] death." State v. Osborne (Apr. 8, 1999), Franklin App. No. 98AP-741, unreported, citing State v.Kidder (1987), 32 Ohio St.3d 279, 283. See, also, State v. Edwards
(1985), 26 Ohio App.3d 199. A person acts purposely when it is his or her specific intention to cause a certain result. See R.C.2901.22(A); see, also, Edwards, supra; State v. Koenig (June 20, 1996), Allen App. No. 1-95-61, unreported. A jury may infer an intent to kill where (1) the natural and probable consequence of a defendant's act is to produce death, and (2) all of the surrounding circumstances allow the conclusion that a defendant had an intent to kill. Edwards, supra, citing State v. Robinson
(1954), 161 Ohio St. 213. See State v. Morgan (Nov. 17, 1987), Franklin App. No. 86AP-854, unreported; Osborne, supra.
Defendant first asserts not only that the table leg with which Dilworth originally was struck caused the most severe injuries but that the testimony of the state's doctor failed to corroborate defendant caused the life-threatening injuries Dilworth sustained. The attempt statute, however, does not mandate that the victim sustain any injury from the attempted act of murder. State v. Talley (Sept. 25, 1998), Lake App. No. 97-L-169, unreported. Thus, the intent of the accused, not the result, is the determinative factor.
Moreover, "a finding of an intent or purpose to kill may be predicated on an accused's attack of another regardless of whether a weapon is used." State v. Kish (June 8, 1994), Lorain App. No. 93CA005773, unreported, citing State v. Powell (1955), 142 N.E.2d 244, 246 (finding that a defendant who continued to beat a man who lay helpless on the ground purposely killed him). Based on the surrounding circumstances, which include the vulnerability of the victim and the force with which the victim was struck, a blow to the head may be probative of intent to kill.State v. Houston (June 29, 1995), Allen App. No. 1-94-95, unreported, citing Edwards, supra. Thus, in State v. Mitchell
(Mar. 5, 1986), Hamilton App. No. C-850349, unreported, the court found the evidence sufficient to convict defendant of attempted murder and felonious assault where the defendant kicked the victim until she sustained brain damage, skull, collarbone, nose and face fractures, and damage to her ears, such that surgical intervention was necessary to save victim's life. See, also, State v. Brown
(Feb. 16, 1994), Summit App. No. 16319, 16338, unreported (holding defendant guilty of attempted murder when another co-conspirator severely beat victim as defendant searched for valuables).
Here, the state's testimony through Grace Caplinger revealed that defendant kicked Dilworth in the head no less than ten times and no more than twenty, and then stomped his face. Frank Caplinger corroborated his mother's testimony by testifying that defendant kicked Dilworth in the head ten to twelve times: "He was like laying on his back with his head facing towards the Doren Market, and he [defendant] was just kicking him in his head, jumping on him and stomping on him every time his head would move back and forth." (Tr. 124.) Moreover, defendant's actions occurred when Dilworth, unconscious and already severely injured from being hit in the head with a table leg, was defenseless and unable to protect his head or fight back. Given the severity of the assault, coupled with Dilworth's condition at the time, the evidence was sufficient to allow reasonable minds to conclude that defendant had an intent to kill. State v. Bynum (Feb. 8, 2000), Franklin App. No. 99AP-416, unreported; In the Matter of Swackhammer (Nov. 26, 1986), Ross App. No. 1284, unreported (finding an intent to kill from the fact that some of the blows to the victim's head were made while victim was not moving). The fact that Dilworth survived, albeit not from any restraint defendant exercised, does not render the evidence insufficient: it only renders the appropriate charge, attempted murder, rather than murder. The trial court properly denied defendant's Crim.R. 29(A) motion as to attempted murder.
To support defendant's felonious assault conviction, the state was required to prove that the defendant knowingly caused serious physical harm to Dilworth. Because the evidence already noted was more than sufficient to allow any rational fact finder to conclude that the state had sustained its burden, the trial court properly denied defendant's Crim.R. 29(A) motion on defendant's felonious assault charge.
Defendant also challenges the verdict as against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997),78 Ohio St.3d 380 ("[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230.
In response to the state's evidence, defendant testified to a different version of the incident. Resolution of the discrepancies, however, is a credibility determination within the province of the jury. DeHass, supra. Given the evidence before the jury, already noted, the jury's verdict on the attempted murder charge is not against the manifest weight of the evidence.
Defendant contends his felonious assault is against the manifest weight of the evidence because the indictment charged defendant with causing physical harm with a wooden club. Contrary to defendant's assertion, the indictment charged that defendant "did knowingly cause serious physical harm to George Dilworth, and/or cause or attempt to cause physical harm to George Dilworth by means of a deadly weapon, to wit: a wooden club." Because the evidence more than adequately supports the first alternative, defendant's felonious assault conviction is not against the manifest weight of the evidence.
Accordingly defendant's first and third assignments of error are overruled.
Defendant's second assignment of error asserts the trial court improperly instructed the jury regarding his felonious assault charge because the state presented no evidence to support the charge in the indictment that defendant used a wooden club. As noted, however, defendant's felonious assault count in the indictment was set forth in the alternative pursuant to the language of R.C. 2903.11, which states:
(A) No person shall knowingly:
(1) Cause serious physical harm to another ***;
 (2) Cause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Similarly, the jury instruction stated: "In count two of the indictments, defendant Harvey Griffith, case number 98CR-3642; and defendant Sanford Hammons, case number 98CR-3643; and defendant Jamie Clay, case number 98CR-5103, are each charged with felonious assault. Before you can find the defendant guilty of felonious assault, you must find beyond a reasonable doubt that on or about the 16th day of June, 1998, and in Franklin County, Ohio, the defendant knowingly caused serious physical harm to George Dilworth and/or caused or attempted to cause physical harm to George Dilworth by means of a deadly weapon, to wit: a wooden club." (Tr. 417-418.) (Emphasis added.) The instruction thus was correct both under the indictment and the pertinent statute.
Defendant nonetheless challenges the instruction as misleading, because it lumps all the defendants together instead of distinguishing the acts of the individual defendants. Defendant, however, failed to object to the jury instruction before the jury retired to consider its verdict, and pursuant to Crim.R. 30(A) has waived all but plain error. State v. Riser (Mar. 21, 1991), Franklin App. No. 90AP-603, unreported. To constitute plain error, the record must show that but for that error the outcome of the trial would have been different. Id. See State v.Rutledge (June 1, 1993), Franklin App. No. 92AP-1401, unreported;State v. Hike (May 21, 1998), Franklin App. No. 97APA04-554, unreported.
A jury instruction should be a plain and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. Brunner Brunner v. Abboud (Feb. 27, 1996), Franklin App. No. 95APE07-933, unreported. (Citations omitted.) See, also, State v. Riser, supra. Here, the trial judge presented the jury with all the essential elements of felonious assault under either alternative. This court has upheld jury instructions and indictments listing felonious assault in the alternative. See State v. Harris (Sept. 11, 1984), Franklin App. No. 84AP-156, unreported (holding that the prosecution was not required to elect between the two ways of committing felonious assault). See, also, State v. Steele (Sept. 21, 1995), Franklin App. No. 95APA01-124, unreported.
Further, because the instruction pertained to all defendants, whose actions could have constituted felonious assault under either or both alternatives, the instruction did not rise to the level of plain error. Finally, in an effort to clarify, the trial court instructed the jury that some of the charged offenses provided alternative ways of committing the offense, and before finding a defendant guilty, the jury had to be unanimous in the verdict as to any one alternative. See State v. Harris, supra;State v. McKnight (Mar. 16, 1995), Franklin App. No. 94APA08-1242, unreported.
Because the jury instructions accurately addressed the law, and any confusion in them fails to rise to the level of plain error, defendant's third assignment of error is overruled.
Having overruled all three of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN, P.J., and TYACK, J., concur.