## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 18 2018, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Appellate Clinic
Indiana University
Robert H. McKinney School of Law
Indianapolis, Indiana

James R. Strickland
Certified Legal Intern

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chris D. Hawkins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 18, 2018

Court of Appeals Case No.
47A04-1709-CR-2185

Appeal from the Lawrence
Superior Court

The Honorable William G. Sleva,
Judge

Trial Court Cause No.
47D02-1507-F3-868

**Bailey, Judge.**

# Case Summary

Chris Hawkins ("Hawkins") appeals his conviction, following a jury trial, of Battery, as a Level 3 felony.[1] He raises four issues on appeal, but we address only the dispositive issue of whether the trial court abused its discretion when it refused to give Hawkins's proposed jury instruction regarding a "reasonable theory of innocence" applicable to wholly circumstantial evidence because it found this case involved direct evidence. Appellant's Br. at 6.

We reverse, vacate the conviction, and remand for a new trial.

# Facts and Procedural History

C.C. was born on June 22, 2014. In the summer of 2015, C.C. and his mother, Shannon Hadley ("Hadley"), moved in with Hawkins into Hawkins's mother's house. Hawkins's daughter also lived in the home. Both Hawkins and Hadley provided care for C.C. On July 16, 2015, C.C. suffered a significant head injury that required serious medical attention. After being treated at the hospital for a few days, C.C. recovered from his injuries.

The State charged Hawkins with battery of C.C., resulting in serious bodily injury to a person less than fourteen years of age, as a Level 3 felony. At Hawkins's five-day jury trial, Hadley testified that, on July 16, 2015, Hawkins

---

[1] Ind. Code § 35-42-2-1(b), (i) (2015).

was putting C.C. down for a nap on a bed in a back bedroom of the home while Hadley watched a movie in the front living room. Hadley heard "a little thump," Tr. Vol. III at 36, and then heard Hawkins calling to her to call 9-1-1 because C.C. was not breathing. When Hadley entered the bedroom, C.C. was laying limp in Hawkins's arms. Hadley immediately called 9-1-1 and reported that her son was not breathing. The 9-1-1 operator "talked [Hadley and Hawkins] through how to get [C.C.] to start breathing." *Id*. When Hadley and Hawkins began "blowing in [C.C.'s] face," C.C. vomited. *Id*. Hadley and Hawkins continued resuscitation efforts and C.C. began to breathe again; however, C.C. remained unresponsive.

[5]     Emergency Medical Team ("EMT") personnel Chad Lee Hillenburg ("Hillenburg") testified that he soon arrived on the scene and found C.C. unresponsive, with a faint heartbeat and slow respiration. Hillenburg testified that Hawkins told him that the child had tripped over a fan, fallen, and hit his head. Hadley testified that, after C.C. had been taken to the hospital, Hawkins told her that, although Hawkins did not see it, C.C. had tripped over a vacuum cleaner when coming into the bedroom through the back door. However, Hadley testified that Hawkins informed her the next day that C.C. had tripped over a fan. Riley Hitchcock ("Officer Hitchcock") of the Lawrence County Sheriff's Department, who was dispatched to the scene on July 16, testified that there was both a vacuum cleaner and a fan in the bedroom "just inside the doorway" to the back yard. Tr. Vol. III at 28.

[6] Dr. Tara Harris ("Dr. Harris") testified at Hawkins's trial as an expert witness for the State. Dr. Harris is a physician at Riley Hospital, where C.C. was treated, and she specializes in child abuse pediatrics. C.C.'s Riley physicians called Dr. Harris in to consult on C.C.'s treatment because, in addition to having an "altered mental status," C.C. also had "lots of bruises." *Id*. at 81. C.C. had bruises on his cheeks and jawline. He also had bruises on his right hand, his right wrist, and his right forearm. He had a bruise in the middle of his back, some bruises further down his back, and a bruise above his penis. Because of his external bruising, Dr. Harris determined that C.C. had been physically abused and suffered "abusive head trauma." *Id*. at 85-86. Specifically, Dr. Harris testified that children typically do not get bruises on their cheeks, jaw lines, or the area above their genitals from accidental falls. *Id*. at 87. C.C. also had retinal hemorrhages in both of his eyes, which Dr. Harris testified supports a diagnosis of abusive head trauma. Dr. Harris testified that the subdural hemorrhage over the surface of the right side of C.C.'s brain would be caused by acceleration through space and sudden deceleration, requiring an amount of force that a seventeen-month-old child could not generate on his own by falling or engaging in other normal toddler activities. *Id*. at 88.

[7] After the State rested its case, Hawkins introduced testimony from a different medical expert, Dr. John Galaznik ("Dr. Galaznik"), who specialized in the area of physical injury—including abusive injury—to infants and small children. Dr. Galaznik testified that, after reviewing the factual history of the July 16 injury, C.C.'s medical history, and all of C.C.'s medical records from

the July 16 injury, he concluded that C.C.'s small subdural hemorrhage on the outside of his brain could have resulted from a typical accidental fall for a child of C.C.'s age. Dr. Galaznik testified that retinal hemorrhaging, subdural bleeding, brain injury, and even death can all occur as a result of a short fall. Tr. Vol. IV at 77, 89-90. And he testified that C.C.'s bruises could also have been the result of normal toddler activity.

[8] Through Dr. Harris, the State offered into evidence five photographs, a doctor's report, and testimony about the multiple bruises on C.C.'s body. Initially, the trial court admitted that evidence over Hawkins's objections. However, at the conclusion of the trial, the court instructed the jury as follows:

> With the exception of facial bruising in State's Exhibits 6 and 7, you shall not consider evidence of other random bruises. They cannot be used as evidence of anything, as their existence does not go toward proving any fact the State has [to] prove in this case.

Tr. Vol. V at 23.

[9] The trial court also gave a pattern jury instruction on direct and circumstantial evidence. However, the court declined to add to that instruction Hawkins's tendered language regarding a "reasonable theory of innocence" where proof of the *actus reus* is entirely circumstantial because the court found that there was direct evidence of the crime in this case. Tr. Vol. IV at 190-91, 195-96.

[10] The jury found Hawkins guilty as charged, and the trial court imposed a sixteen-year sentence with one year suspended to probation. This appeal ensued.

# Discussion and Decision

[11] Hawkins challenges the trial court's denial of his request to include the "reasonable theory of innocence" language in the jury instruction regarding circumstantial evidence.

> Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion. *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions. *Id*. at 345–46. "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case." *Whitney v. State*, 750 N.E.2d 342, 344 (Ind. 2001) (quoting *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind. 1996)).

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

[12] It is clear—and the parties both agree—that a "reasonable theory of innocence" instruction must be given to the jury when the only evidence of the commission of the crime is circumstantial. As our Supreme Court held in *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012) (emphasis original):

when the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence*.[2]

*See also* 2 Indiana Judges Association, Indiana Pattern Jury Instructions—Criminal, 4th Ed., 13.1000 (Matthew Bender) (containing, verbatim, the above "reasonable theory of innocence" language as an option to be added to the instruction on reasonable doubt, and noting in comments that such language "was written by the Indiana Supreme Court for use in cases in which the trial judge makes the determination that all the evidence of guilt of the *actus reus* elements of the crime is circumstantial[,]" with quotation and citation to *Hampton*).  The *Hampton* decision also made it clear that it is the trial court's duty—not the jury's—to determine whether the evidence in the case is solely

---

[2] In addition to requesting the specific language of the instruction as stated in *Hampton*, Hawkins requested that the court add language approved by the Supreme Court in *Hall v. State*, 405 N.E.2d 530, 534 (Ind. 1980), i.e., "However, circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with the defendant's guilt, wholly inconsistent with any reasonable theory of the defendant's innocence, and are so convincing as to exclude a reasonable doubt of the defendant's guilt." Appellant's App. at 104.  The trial court denied that request.

Although the additional language Hawkins suggests was approved by the Supreme Court in *Hall*, it is largely duplicative of the language approved in *Hampton*.  Thus, the Supreme Court has found the additional language unnecessary.  *See Gambill v. State*, 675 N.E.2d 668, 675 (Ind. 1996).  Therefore, when we refer to the "reasonable theory of innocence" instruction, we refer to only the one italicized sentence approved in *Hampton*.  *Hampton*, 961 N.E.2d at 491.

circumstantial such that the reasonable theory of innocence instruction must be given. *Id*. at 490.

[13] The only question on which the parties disagree is whether or not the case involved any direct evidence of the *actus reus*. The State contends—and the trial court agreed—that the evidence indicating that Hawkins was the only person in the room with C.C. at the time of his injury and Dr. Harris' testimony that the injury could not have been caused by an accidental fall were direct evidence that Hawkins committed battery against C.C. However, we agree with Hawkins that the evidence of the *actus reus*[3] was purely circumstantial, and the trial court erred in concluding otherwise.

[14] As the Supreme Court noted in *Hampton*, direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* 675 (10th ed. 2014). Circumstantial evidence, on the other hand, is "[e]vidence based on inference and not on personal knowledge or observation." *Id*. at 674. Here, the only evidence of Hawkins's commission of a battery against C.C. was: (1) evidence of C.C.'s injuries to his head, including bruising on his face; (2) evidence that Hawkins was the only person in the room with C.C. when C.C. was injured; and (3) Dr. Harris' testimony that, in her expert opinion, C.C.'s injuries could

---

[3] *Actus reus* is "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability." *Black's Law Dictionary* 44 (10th ed. 2014). In this case, the *actus reus* was the touching of C.C. in a rude, insolent, or angry manner, i.e., the battery of C.C. I.C. § 35-42-2-1(b), (i) (2015).

not have resulted from an accidental short fall. All of that evidence is circumstantial; that is, none of that evidence is based on personal knowledge that Hawkins injured C.C. or personal observation of Hawkins injuring C.C. Put another way, each of those three pieces of evidence requires an inference to conclude that it was Hawkins who injured C.C.[4]

[15] Both the State and the trial court relied on *Clemens v. State*, 610 N.E.2d 236, 243-44 (Ind. 1993), as support for the holding that there was direct evidence of the *actus reus* in this case. In *Clemens*, the Supreme Court found "direct evidence" from the defendant's admission that he was present when the victim sustained his injuries and the pathologist's testimony that those injuries must have been inflicted intentionally. *Id*. at 243-44. However, while *Hampton* did not explicitly overrule *Clemens*, it did so by implication. In *Hampton*, the Supreme Court noted the *Clemens* decision was "based on the presence of evidence liberally deemed to be 'direct' rather than 'circumstantial.'" 961 N.E.2d at 490. The Court noted that *Clemens* did not require direct evidence of the *actus reus*—i.e., the *conduct* required for the commission of the crime—but

---

[4] The State contends that there was also evidence that Hawkins gave "conflicting stories" regarding how C.C. fell. Appellee's Br. at 22. However, it is not clear from the record that such was the case. Although Hawkins did not testify, the evidence indicated that Hawkins consistently maintained that he was not observing C.C. at the time C.C. sustained an injury; rather, although he did not witness it, Hawkins told both Hadley and the police that he believed C.C. had tripped over an object, fell, and suffered an injury. That the object C.C. tripped over could have been either a fan or a vacuum cleaner is not relevant as Officer Hitchcock testified that both of those objects were near the door where C.C. was injured.

only direct evidence of one element of the crime—i.e., presence at the crime scene and/or opportunity to commit the crime. *Id*.

[16] The *Hampton* court contrasted the *Clemens* approach with the decision in *Spears v. State*, 401 N.E.2d 331 (Ind. 1980), *overruled on other grounds by Hicks v. State*, 544 N.E.2d 500 (Ind. 1989), where the Supreme Court reversed a murder conviction because there was no direct evidence of the *conduct* required for the commission of the crime, i.e., *actus reus*. The *Hampton* court then specifically adopted the *Spears* approach:

> [W]e elect to apply the approach taken in *Spears* and direct that the "reasonable theory of innocence" instruction is appropriate only where the trial court finds that the evidence showing that the *conduct* of the defendant *constituting the commission of a charged offense*, the *actus reus*, is proven exclusively by circumstantial evidence.

961 N.E.2d at 490 (emphasis added).[5]

[17] Here, as in *Clemens*, there is direct evidence that Hawkins was *present* at the scene of the alleged crime, i.e., battery of C.C. But, as in *Spears*, there is no direct evidence of Hawkins's *conduct* constituting the crime of battery against C.C.; all evidence relating to Hawkins's conduct is exclusively circumstantial.

---

[5] We note that the *Hampton* decision is consistent with the well-settled principle that "'[m]ere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction.'" *Willis v. State*, 27 N.E.3d 1065, 1068 (Ind. 2015) (quoting *Pratt v. State*, 744 N.E.2d 434, 436 (Ind. 2001)). Rather, our Supreme Court has held that presence at the crime scene will support a conviction only if, "in connection with *other* circumstantial evidence tending to show participation," it raises a reasonable inference of guilt. *Id*. (emphasis added).

Therefore, pursuant to *Hampton*, the trial court was required to give the jury the reasonable theory of innocence instruction.[6] *Id.* at 491.

[18] However, the State contends that, even if the trial court erred, the error was harmless because the substance of the reasonable theory of innocence instruction was covered by other jury instructions. Specifically, the State maintains that the instruction regarding the presumption of innocence was the "functional equivalent" of the reasonable theory of innocence instruction[7] and, therefore, the absence of the latter instruction would not likely have impacted the jury's verdict. *E.g.*, *Townsend v. State*, 934 N.E.2d 118, 127-28 (Ind. Ct. App. 2010) (holding that an instruction error will result in reversal when we cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict if the instruction had been given), *trans. denied*.

[19] The language of the "reasonable theory of innocence" instruction required under *Hampton* and omitted by the trial court in the instant case is: "In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should *require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence*." 961 N.E.2d at 491. The presumption of

---

[6] We note that the reasonable theory of innocence instruction could be placed in the instruction on direct and circumstantial evidence, as Hawkins requested, or in the reasonable doubt instruction, as the Indiana Pattern Jury Instructions, Criminal, suggest. 2 Indiana Judges Association, Indiana Pattern Jury Instructions—Criminal, 4th Ed., 13.1000 (Matthew Bender).

[7] The State also points to the instruction regarding reasonable doubt. However, as the State acknowledges, the Supreme Court held in *Hampton* that a reasonable doubt instruction does not cure the absence of a reasonable theory of innocence instruction; rather, both instructions are required when the evidence of the criminal act is exclusively circumstantial. *Id.* at 486-87.

innocence instruction given to the jury in Hawkins's case stated, in relevant part: "If the evidence lends itself to two reasonable interpretations, you must choose the interpretation consistent with the defendant's innocence." Appellant's App. Vol. II at 125.

[20] The latter instruction was insufficient to cure the absence of the reasonable theory of innocence instruction in this case for same reasons that *Hampton* found a reasonable doubt instruction insufficient. The reason for the "reasonable theory of innocence" instruction relates to the *nature* of circumstantial evidence, and it "provides the jury with an additional cautionary instruction in evaluating circumstantial evidence." *Hampton*, 961 N.E.2d at 487. As the court noted in *Hampton*, the importance of the reasonable theory of innocence instruction in cases involving only circumstantial evidence is "deeply imbedded in Indiana jurisprudence" because:

> [w]hile a criminal conviction may properly rest entirely upon circumstantial evidence, there is a qualitative difference between direct and circumstantial evidence with respect to the degree of reliability and certainty they provide as proof of guilt. Such a supplemental instruction is a safeguard urging jurors to carefully examine the inferences they draw from the evidence presented, thereby helping to assure that the jury's reasoning is sound. Additionally, it serves to "reiterat[e] the magnitude of the ['proof beyond a reasonable doubt'] standard to juries when the evidence before them is purely circumstantial." *Nichols* [*v. State*], 591 N.E.2d [134,] 136 [Ind. 1992]. In this regard, the "reasonable theory of innocence" instruction informs the jury that if a reasonable theory of innocence can be made of the circumstantial evidence, then there exists a reasonable doubt, and the defendant is entitled to the benefit of that doubt.

*Id*. at 486.

[21]  Neither the reasonable doubt instruction nor the presumption of innocence instruction addressed the specific concerns about the degree of reliability and certainty that circumstantial evidence, alone, provides as proof of guilt, nor did they reiterate the magnitude of the proof beyond a reasonable doubt standard that is required when the evidence is exclusively circumstantial. And the circumstantial evidence of guilt was not so overwhelming that a reasonable jury would necessarily have found Hawkins guilty even with the reasonable theory of innocence instruction; rather, there was conflicting expert testimony regarding the key issue of whether C.C.'s injury was caused intentionally or was caused by an accidental fall. Thus, we cannot say with complete confidence that the jury would have rendered a guilty verdict if the reasonable theory of innocence instruction had been given. *Townsend*, 934 N.E.2d at 127-28. And, "reversal is required if the jury's decision may have been based upon an erroneous instruction." *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015) (quotation and citation omitted).

[22]  Finally, we must address the issue of sufficiency of the evidence in order to ensure that any retrial will not be barred by principles of double jeopardy. *E.g.*, *Clark v. State*, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000), *overruled on other grounds by Paffo v. State*, 778 N.E.2d 798, 803 (Ind. 2002).

> Evidence is insufficient to convict when no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Matthews v. State*, 718 N.E.2d 807, 810–11 (Ind. Ct. App.

1999).  Retrial is the proper remedy when a conviction is reversed on appeal for error and the evidence at trial was sufficient to support the original conviction.  *Id.*

*Id.*

[23] Here, we reverse because of the error in the jury instructions, but we cannot say that the evidence at trial was insufficient to support the original conviction. Therefore, we remand for a new trial.

# Conclusion

[24] Because the trial court abused its discretion by failing to give the reasonable theory of innocence instruction to the jury and that error likely impacted Hawkins's substantial rights, we reverse the trial court, vacate Hawkins's conviction, and remand for a new trial.

[25] Reversed, vacated, and remanded.

Crone, J., and Brown, J., concur.