## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2019, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nicholas Dunkerson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 13, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-1881 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Richard Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1704-F2-15327 |

**Bailey, Judge.**

# Case Summary

Nicholas Dunkerson ("Dunkerson") appeals his convictions,[1] following a jury trial, for dealing methamphetamine, as a Level 2 felony,[2] and possessing methamphetamine, as a Level 3 felony.[3]

We affirm.

# Issues

Dunkerson raises the following two restated issues:

1. Whether the State presented sufficient evidence to support his convictions for dealing methamphetamine and possessing methamphetamine.

2. Whether the trial court committed reversible error when it failed to instruct the jury regarding a reasonable theory of innocence.

# Facts and Procedural History

At approximately 3:00 a.m. on April 23, 2017, Indianapolis Police Officer David Williams ("Officer Williams") was dispatched to investigate a report of a

---

[1] Dunkerson was also convicted of resisting law enforcement, as a Class A misdemeanor. Ind. Code § 35-44.1-3-1(a)(3). He does not appeal that conviction.

[2] I.C. § 35-48-4-1.1(a)(2), (e)(1).

[3] I.C. § 35-48-4-6.1(a), (d)(1).

disturbance. By the time police arrived, the altercation was over, and the suspect had left the scene. However, individuals at the scene informed the officers that one of the individuals who had fled the scene was possibly suicidal, and they described him as a white young man wearing a black shirt.

[5] As he was patrolling the area looking for the young man, Officer Williams saw a white male in a black t-shirt—later identified as Dunkerson—talking to a woman who appeared to be crying and in distress in the parking lot of a gas station. Dunkerson and the woman—later identified as Kristin McCoy ("McCoy")—were standing on either side of a parked Toyota Camry. Officer Williams pulled into the gas station, parked, stepped out of his patrol car, and asked Dunkerson what he was doing. Officer Williams then turned his spotlight toward Dunkerson, and Dunkerson immediately ducked down behind the Camry.

[6] Officer Williams was still able to partially see Dunkerson through the windows of the Camry, and he saw that Dunkerson had his right hand in his jacket pocket. Dunkerson did not say anything. While still ducking down behind the Camry, Dunkerson shuffled back and forth from the front right side of the car to the middle of the car. Dunkerson looked directly into Officer Williams's eyes as he shuffled about. After about fifteen seconds of this behavior, Dunkerson moved toward the front of the car and suddenly took off running toward the front door of the gas station. As Dunkerson fled, Officer Williams ordered him to stop, but Dunkerson did not. Therefore, Officer Williams followed Dunkerson into the gas station store.

[7] Officer Williams located Dunkerson crouching down between two aisles inside the store. He ordered Dunkerson to show his hands and Dunkerson complied. Officer Williams then approached Dunkerson, turned him around, and tried to handcuff his hands behind his back. Dunkerson stiffened his right arm and turned around to face Officer Williams "as if he was going to run or fight [him]." Tr. at 101. Officer Williams then pressed on Dunkerson's chest to force him off balance, thereby regaining control of Dunkerson's hands, and placed Dunkerson in handcuffs. He then patted Dunkerson down for weapons and found none.

[8] Officer Williams then walked Dunkerson outside and retraced Dunkerson's steps from the store entry back to the front right side of the Camry. Less than one minute had passed since Dunkerson had initially run into the gas station store. McCoy was still standing in the same general area where she had been standing when Officer Williams entered the store, which was on the left side of the Camry—i.e., the opposite side of the Camry from where Dunkerson had been ducking before he ran into the store. McCoy had shifted slightly toward the door of the store, which meant that she had moved further from the side of the car where Dunkerson had been crouching.

[9] After he walked back to the Camry, Officer Williams saw a small plastic baggie between the curb of the sidewalk and the front right tire of the Camry. The bag contained five smaller, knotted plastic bags that each contained methamphetamine. The total amount of methamphetamine contained in the bags was over thirty-three grams. As Officer Williams picked up the bag and

examined it, Dunkerson repeatedly stated that "it wasn't his."  Tr. at 103.
Officer Williams later found $130 in cash in a search of Dunkerson's person,
but he did not find any paraphernalia for the consumption of
methamphetamine.

[10]     The State charged Dunkerson with dealing in methamphetamine, as a Level 2
felony; possession of methamphetamine, as a Level 3 felony; and resisting law
enforcement, as a Class A misdemeanor.  Following a jury trial held on June
21, 2018, the jury found Dunkerson guilty as charged.  On July 13, the trial
court sentenced Dunkerson to seventeen years, with seven years suspended, for
dealing methamphetamine and concurrent terms of seven years for possession
of methamphetamine and one year for resisting law enforcement.  This appeal
ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[11]     Dunkerson challenges the sufficiency of the evidence to support his convictions
for dealing and possessing methamphetamine.  Our standard of review of the
sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to
> support a criminal conviction, we neither reweigh evidence nor
> judge witness credibility.  *Bailey v. State*, 907 N.E.2d 1003, 1005
> (Ind. 2009).  "We consider only the evidence supporting the
> judgment and any reasonable inferences that can be drawn from
> such evidence."  *Id*.  We will affirm if there is substantial

evidence of probative value such that a reasonable trier of fact
could have concluded the defendant was guilty beyond a
reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.
Moreover, "[a] conviction may be based on circumstantial evidence alone so
long as there are reasonable inferences enabling the factfinder to find the
defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d
385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*; *see also Whitney v.
State*, 726 N.E.2d 823, 825 (Ind. Ct. App. 2000) (quotation and citation
omitted) ("Where the evidence of guilt is essentially circumstantial, the
question for the reviewing court is whether reasonable minds could reach the
inferences drawn by the jury; if so, there is sufficient evidence.").

[12] To support Dunkerson's conviction of possession of methamphetamine, as a
Level 3 felony, the State was required to prove that Dunkerson (1) knowingly or
intentionally (2) possessed methamphetamine (3) in an amount equal to at least
twenty-eight grams. I.C. § 35-48-4-6.1(a), (d)(1). A conviction for possession
may rest on evidence which shows either actual or constructive possession.
*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). A person actually possesses
contraband when he or she has direct physical control over it. *Id*. A person
constructively possesses contraband when "the person has (1) the capability to
maintain dominion and control over the item; and (2) the intent to maintain
dominion and control over it." *Id*. (citation omitted). Sometimes the same
circumstantial evidence may be sufficient to establish constructive possession or

to support an inference of actual possession. *State v. Hill*, 688 N.E.2d 1280, 1283 (Ind. Ct. App. 1997) (holding circumstantial evidence that a handgun was laying on the back seat of a vehicle next to the defendant was sufficient to establish constructive possession and/or to support an inference of actual possession), *trans. denied*.

[13] Here, the State provided sufficient circumstantial evidence from which the jury could infer that Dunkerson actually possessed the methamphetamine.[4] The evidence established that: Dunkerson behaved in a suspicious manner when approached by Officer Williams—i.e., he ducked down behind a car; Officer Williams observed Dunkerson put his hand in his pocket; Dunkerson bent down next to the place where the drugs were eventually found, and then ran from police; there was no evidence that, for the duration of the confrontation, anyone else was near the place where the drugs were found; Dunkerson continued to hide from police while in the store; Dunkerson resisted being handcuffed; and Dunkerson repeatedly stated the drugs were not his, before anyone even questioned him about them. From all of this circumstantial evidence, the jury could reasonably infer that Dunkerson actually, knowingly possessed the drugs.[5] *See, e.g.*, *Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) (noting that evidence of flight and attempts to avoid arrest may be

---

[4] Dunkerson does not dispute that the amount of the methamphetamine was greater than twenty-eight grams.

[5] This same circumstantial evidence is also sufficient to show that Dunkerson constructively possessed the drugs; i.e., that he had the capability and intent to maintain dominion and control over them.

circumstantial evidence "tend[ing] to show guilt"); *see also Hayes v. State*, 876 N.E.2d 373, 375-76 (Ind. Ct. App. 2007) (finding sufficient circumstantial evidence to infer actual possession of drugs where the officer observed defendant reach down into bin where drugs were later found and then flee from the officer), *trans. denied*. Dunkerson's contentions to the contrary are simply requests that we reweigh the evidence, which we cannot do. *Clemons*, 996 N.E.2d at 1285. There was sufficient evidence to support the possession conviction.

[14] To support Dunkerson's conviction for dealing in methamphetamine, as a Level 2 felony, the State was required to prove that Dunkerson (1) possessed methamphetamine (2) in an amount equal to at least ten grams (3) with the intent to deliver it, and (4) either the amount of methamphetamine was equal to at least twenty-eight grams or there was evidence in addition to the weight of the drug that Dunkerson intended to deliver it. I.C. § 35-48-4-1.1(a), (b), (e). As previously noted, there was sufficient circumstantial evidence that Dunkerson possessed the drugs. And there was also sufficient circumstantial evidence to establish that Dunkerson intended to deliver the drugs. "The possession of a large amount of narcotics is circumstantial evidence of intent to deliver." *Adamov v. State*, 536 N.E.2d 281, 283 (Ind. 1989). It is undisputed that the amount of methamphetamine at issue in this case weighed well above the ten grams required to prove dealing as a Level 2 felony and also above the twenty-eight grams required to prove intent to deliver based solely on the

weight of the drugs.  I.C. § 35-48-4-1.1(b).  Therefore, there was sufficient evidence to support Dunkerson's dealing conviction.

# Jury Instructions

[15]    Dunkerson challenges the trial court's denial of his request to include the "reasonable theory of innocence" language in the jury instruction regarding circumstantial evidence.

> Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion.  *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013).  We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions.  *Id.* at 345–46.  "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case."  *Whitney v. State*, 750 N.E.2d 342, 344 (Ind. 2001) (quoting *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind. 1996)).

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).  Moreover, we will disregard an instruction error as harmless unless it affects the substantial rights of a party.  Ind. Trial Rule 61.  "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise."  *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001).

[16] It is clear that a "reasonable theory of innocence" instruction should be given to the jury when the only evidence of the commission of the crime is circumstantial. *Hawkins v. State*, 100 N.E.3d 313, 316 (Ind. Ct. App.) (citing *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012)); *see also* 2 Indiana Judges Association, Indiana Pattern Jury Instructions—Criminal, 4th Ed., 13.1000 (Matthew Bender). The specific language approved in *Hampton* when the "*actus reus*," i.e., conduct required to commit the crime, is established solely by circumstantial evidence is: "In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." 961 N.E.2d at 491. This instruction may be placed in either the circumstantial evidence instruction or the reasonable doubt instruction. *Hawkins*, 100 N.E.3d at 318 n.6.[6]

[17] Here, as we concluded above, the only evidence of Dunkerson's *actus reus*—i.e., *possessing* the large amount of drugs—is circumstantial. Therefore, the trial court was required to give the jury the reasonable theory of innocence instruction,[7] the substance of which was not covered by the other instructions

[6] In arguing that the reasonable theory of innocence language may only be given in the reasonable doubt instruction, State's Br. at 15 n.3, the State apparently misreads footnote 6 of the *Hawkins* decision, which states: "We note that the reasonable theory of innocence instruction could be placed in the instruction on direct and circumstantial evidence, as Hawkins requested, or in the reasonable doubt instruction, as the Indiana Pattern Jury Instructions, Criminal, suggest." 100 N.E.3d at 318.

[7] The trial court was not required to give the reasonable theory of innocence language specifically proposed by Dunkerson; as the State notes, the *Hampton* court disapproved of the confusing wording "proof of guilt by circumstantial evidence only," which was the wording proposed by Dunkerson. *Hampton*, 961 N.E.2d at

given. However, the trial court's error in failing to give that instruction was harmless, as Dunkerson's convictions were clearly sustained by the evidence and a reasonable jury could not properly have found otherwise. *Dill*, 741 N.E.2d at 1233.

# Conclusion

[18] The State provided sufficient evidence to support Dunkerson's convictions for possessing and dealing methamphetamine. And, although the trial court erroneously failed to give the jury a reasonable theory of innocence instruction, that error was harmless.

[19] Affirmed.

Bradford, J., and Brown, J., concur.

---

489-90. However, the trial court was required to give the correctly worded reasonable theory of innocence instruction, as outlined in *Hampton*. *Hawkins*, 100 N.E.3d at 316.