

**FILED**

Nov 26 2019, 7:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark F. James
Anderson, Agostino & Keller P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.C., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner,* | November 26, 2019 <br><br> Court of Appeals Case No. <br> 19A-JV-1311 <br><br> Appeal from the St. Joseph Probate Court <br><br> The Honorable Jason Cichowicz, Judge <br><br> Trial Court Cause No. <br> 71J01-1901-JD-1 |

**Robb, Judge.**

# Case Summary and Issue

[1] The juvenile court adjudicated J.C. a delinquent child for actions which, if committed by an adult, would constitute child molesting, a Level 4 felony. Evidence of J.C.'s confession to the offense was admitted at the fact-finding hearing. J.C. challenges his adjudication and raises one issue for our review, which we restate as whether the State presented sufficient independent evidence of the charged offense to satisfy the *corpus delicti* rule, making J.C.'s confession admissible. Concluding the State presented independent evidence that provided an inference that J.C. committed child molesting, J.C.'s confession was admissible. Accordingly, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the juvenile court's judgment are as follows. Nicholas Jones and his wife, Daelyn, have three children, A.J., L.D., and G.D. Jones was "pretty good friends" with J.C.'s mother and has known J.C. and his family for some time. Transcript of Evidence, Volume 2 at 7. L.D. and J.C. attend the same school and their families would often take turns carpooling. On August 24, 2018,[1] Jones and Travis Pyott, J.C.'s stepfather, went to Jones'

---

[1] Although the State's brief states that the incident occurred on October 8, 2018, the record indicates the incident occurred on August 24, 2018. *See* Appellant's Appendix, Volume 2 at 18; *see also* Tr., Vol. 2 at 21-22.

home. When the two arrived, Daelyn, the three Jones children, and J.C. and his sister "had just pulled up" to the house. *Id.* at 8.

[3]  Jones had to get ready for "something [he] had to do later in the afternoon" and intended to take a shower. *Id.* In the meantime, Daelyn and Pyott stepped outside to smoke a cigarette, A.J. and J.C. were in the living room, and the other children were playing outside. Jones allowed J.C. to play the family's Xbox, and A.J., who was six months old at the time, was laying on the floor in the living room. Because J.C. "was quite a bit older, . . . [Jones] thought it would be okay to just step out of the [living] room for a second and jump in the shower real quick." *Id.* at 9.

[4]  Jones forgot a bath towel, so he walked to the living room to grab one from a living room chair. When he walked into the living room, he "noticed [J.C.] kind of jump real fast, . . . like [he] was caught." *Id.* J.C. had his back to Jones and Jones saw J.C. trying to buckle up his pants "real quick" and thought J.C.'s behavior was "really suspicious[.]" *Id.* Jones grabbed the towel and went to the bedroom to get his cell phone. He pressed the "record" button on the phone and placed the phone on the chair in the living room near the other bath towels. Jones stated that he "kind of covered [his cell phone] up" so it would not be noticed. *Id.* at 10. Jones left the living room and pretended to take a shower. After waiting roughly five minutes, Jones went back into the living room, picked up his cell phone, and returned to the bedroom to watch the recording.

[5] Immediately after watching the recording, Jones found Daelyn and Pyott and told them, "we've got a serious problem here. You need to come into the bedroom and see this video." *Id*. at 11. Jones showed them the video and they "both pretty much . . . lost it. They got up right away." *Id*.[2] Daelyn proceeded to the living room where she cussed and pointed her finger at J.C. Pyott grabbed J.C. and asked, "Did you touch that baby[?]" *Id*. J.C. was initially silent but eventually said, "No," and Daelyn told J.C. that she had him on video. *Id*. at 12. Jones picked A.J. up and took her into the bedroom to check her to "see if like she was bleeding, or anything like that[.]" *Id*. at 12-13. Jones noticed that the front strap of A.J.'s diaper was high up on her belly above her belly button. The diaper was rolled up and tucked up underneath her vagina, exposing her whole genital area.

[6] Detective Jeremy Wright of the South Bend Police Department received a report from the Department of Child Services regarding the alleged incident and interviewed J.C. on October 24, 2018. During the interview, J.C. admitted that he rubbed the outside of A.J.'s vagina with two fingers and then began to masturbate. *See id*. at 20.

[7] The State filed a delinquency petition alleging that J.C. committed an act that would be child molesting, a Level 3 felony, if committed by an adult. The State

---

[2] We are unable to address the contents of the recording as it was not offered or admitted into evidence at the fact-finding hearing.

later filed an amended petition adding a Level 4 felony child molesting count. *See* Appellant's Appendix, Volume 2 at 12.

[8] At the fact-finding hearing, Detective Wright testified about his interview with J.C. When the State asked Detective Wright whether J.C. disclosed having contact with A.J., J.C. objected. The juvenile court explained that, pursuant to the *corpus delicti* rule, "before you can have a confession admitted the State must present evidence independent of the confession, establishing the crime charged was committed." Tr., Vol. 2 at 19. The State argued that evidence of contact between J.C. and A.J. had been established. The juvenile court agreed, overruled J.C.'s objection, and stated, "I'm inclined to agree there is at least a modicum of circumstantial evidence suggesting that some contact as alleged in the petition occurred, and therefore is sufficient corpus." *Id.* At the conclusion of the hearing, the juvenile court entered a true finding for Level 4 felony child molesting, the State dismissed the Level 3 felony charge, and J.C. was subsequently placed on probation.[3] J.C. now appeals.

# Discussion and Decision

---

[3] Following the presentation of evidence and the juvenile court's judgment, it was brought to the juvenile court's attention that the State's amended petition charged J.C. with a second count of child molesting, a Level 4 felony, but this new charge did not supersede the first count of child molesting, a Level 3 felony. The juvenile court entered a true finding on Count 2 and the State agreed to dismiss Count 1. *See id.* at 29.

# I. Standard of Review

Our standard of review in this area is well-settled. The admission of evidence falls within the sound discretion of the juvenile court, and we review the juvenile court's decision for an abuse of that discretion. *Mack v. State*, 23 N.E.3d 742, 750 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the juvenile court's decision is clearly against the logic and effect of the facts and circumstances before it. *Morrison v. State*, 824 N.E.2d 734, 739 (Ind. Ct. App. 2005), *trans. denied*.

# II. Admission of Confession

J.C. argues that the juvenile court erred by admitting evidence of his confession without proof of the *corpus delicti* – that is, proof the charged crime actually occurred.[4]

> In Indiana, a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. Rather, independent proof of the *corpus delicti* is required before the defendant may be convicted upon a nonjudicial confession. Proof of the *corpus delicti* means "proof that the specific crime charged has actually been committed by someone." Thus, admission of a confession

---

[4] Both parties frame the issue in this case as whether there was sufficient evidence to support J.C.'s adjudication. To sustain a true finding that J.C. committed an act that would constitute Level 4 felony child molesting if committed by an adult, the State was required to prove beyond a reasonable doubt that J.C., with A.J., a child under fourteen years of age, performed or submitted to any fondling or touching with the intent to arouse or satisfy his sexual desires. Ind. Code § 35-42-4-3(b). However, the crux of J.C.'s argument relates solely to an alleged lack of sufficient evidence of the *corpus delicti* and the juvenile court's alleged error in allowing evidence of J.C.'s confession without sufficient proof of the *corpus delicti*. As such, the issue is more appropriately framed as an admission of evidence issue, although our analysis ultimately turns on whether there was sufficient evidence of the *corpus delicti* to support the admission of J.C.'s confession.

requires some independent evidence of commission of the crime charged. The independent evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that the crime charged was committed. This inference may be created by circumstantial evidence.

*Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017) (internal citations omitted). The purpose of this rule is to prevent the admission of a confession to a crime which never occurred. *Id.* The State is not required to prove the *corpus delicti* by independent evidence *prior* to the admission of a confession, provided the totality of independent evidence presented at trial establishes the *corpus delicti*. *McManus v. State*, 541 N.E.2d 538, 539-40 (Ind. 1989). "The *corpus delicti* evidence required to have a confession admitted is not the same as the *corpus delicti* evidence required to sustain a conviction." *Shinnock*, 76 N.E.3d at 844.

[11] We conclude that the totality of independent evidence established an inference that a crime occurred. At the fact-finding hearing, Jones testified that he left J.C. and A.J. alone in the living room so he could take a shower. When Jones walked back into the living room to get a towel, J.C. jumped up "real fast . . . like [he] was caught." Tr., Vol. 2 at 9. Jones saw J.C. buckle his pants quickly while his back was to Jones, which Jones believed was very suspicious. Later, when Jones took A.J. into the bedroom, he noticed that the front strap of her diaper was above her belly button and her diaper was rolled up and tucked up underneath her vagina, exposing her entire genital area.

[12] Proof of the *corpus delicti* of any crime, for purposes of admitting the defendant's out-of-court statement, may be proven by circumstantial evidence and need not

be proven beyond a reasonable doubt. *Groves v. State*, 479 N.E.2d 626, 628 (Ind. Ct. App. 1985). Such is the case here – all of these facts, taken together, support an inference that a crime occurred given that the infant victim in this case is unable to communicate her story. *See Shinnock*, 76 N.E.3d at 842-44 (concluding there was "ample circumstantial evidence" to satisfy the *corpus delicti* rule supporting the admission of the defendant's confession to committing bestiality with a dog where the dog did not greet its owner when he arrived home like the dog usually does, the dog was found trapped inside the defendant's room with him, the defendant was in his underwear and had an erection, dog feces were discovered on the floor, and when the owner opened the door, the dog ran to hide under the couch). As this court has explained, the "paramount consideration in applying the *corpus delicti* rule is whether independent evidence sufficiently corroborates the confession so that a defendant is not convicted of a crime that did not occur." *Seal v. State*, 105 N.E.3d 201, 210 (Ind. Ct. App. 2018) (emphasis added). Given the evidence presented, we conclude that the juvenile court properly found that the *corpus delicti* rule was satisfied and admitted J.C.'s confession into evidence.[5]

---

[5] J.C.'s argument is based on an inapplicable rule of law. As the State points out, it appears that J.C. incorrectly asserts that "[w]hen the actus reus is established exclusively by circumstantial evidence, the trier of fact should require that the proof of guilt is so conclusive and sure to exclude every reasonable theory of innocence." Appellant's Brief at 7. In support of this contention, J.C. cites to *Hawkins v. State,* 100 N.E.3d 313, 316-17 (Ind. Ct. App. 2018), which addressed the trial court's denial of the defendant's request to include the reasonable theory of innocence language in the jury instruction regarding circumstantial evidence. A panel of this court stated that this instruction must be given to the jury when the "only evidence of the commission of the crime is circumstantial." *Id.* at 316. However, *Hawkins* is inapplicable here as that particular case addressed a different issue, namely the propriety of the jury instructions pertaining to

# Conclusion

[13]  We conclude the State presented sufficient independent evidence to satisfy the *corpus delicti* rule and, therefore, the juvenile court properly admitted J.C.'s confession into evidence. Accordingly, we affirm the judgment of the juvenile court.

[14]  Affirmed.

Mathias, J., and Pyle, J., concur.

---

circumstantial evidence. Whether sufficient independent evidence of the charged offense to satisfy the *corpus delicti* rule was not an issue in that case, as it is the case before us.